**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ARIGNA TECHNOLOGY LTD., <br><br> Plaintiff, <br><br> v. <br><br> BAYERISCHE MOTOREN WERKE AG, <br><br> Defendant. | Case No. 2:21-cv-00173-JRG <br><br> JURY TRIAL DEMANDED <br><br> Oral Argument Requested |

**DEFENDANT BAYERISCHE MOTOREN WERKE AG'S
<u>MOTION TO DISMISS PURSUANT TO RULES 12(b)(2), 12(b)(5), 12(b)(6), AND
12(b)(7)</u>**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION – THE COMPLAINT IS DEFICIENT FOR INSUFFICIENT SERVICE, FAILURE TO STATE A CLAIM, AND FAILURE TO JOIN A NECESSARY AND INDISPENSABLE PARTY ............................................................1

II.  FACTUAL BACKGROUND – THE COMPLAINT SUFFERS SEVERAL PROCEDURAL DEFICIENCIES ..........................................................................2

III.  LEGAL STANDARD—FEDERAL RULES REQUIRE PROPER SERVICE STATING PROPER CLAIMS FOR PROPER PARTIES ..................................4

    A.  Rule 12(b)(5) – Arigna has not Properly Served its Original or Amended Complaint...................................................................................................5

    B.  Rule 12(b)(2)—Without Proper Service, This Court Lacks Jurisdiction ...............5

    C.  Rule 12(b)(6) – The *Iqbal/Twombly* Pleading Standard Requires More Than Conclusory Statements ................................................................6

    D.  Rule 12(b)(7) – Necessary and Indispensable Parties Must Be Joined to a Lawsuit.....................................................................................................7

IV.  ARGUMENT—THE AMENDED COMPLAINT REMAINS UNSERVED, FAILS TO ESTABLISH JURISDICTION, FAILS TO PLEAD A CLAIM UPON RELIEF MAY BE GRANTED, AND IMPROPERLY RELIES ON A DISMISSED PARTY ........................................................................................8

    A.  Dismissal Under 12(b)(5)—Arigna Failed to Properly Serve BMW AG with the Amended Complaint. ..............................................................8

        1.  Arigna Has Yet to Effectuate Service of the Amended Complaint on BMW AG as the Original Complaint Is a Legal Nullity of No Effect. .........................................................................................9

        2.  Arigna's Attempts at Service in California Prior to Amending the Complaint Via Unauthorized Agents BMW NA Were Insufficient and Further Failed to Comply with Texas Law. .......................................10

        3.  Arigna's Reliance on Misvenued and Dismissed BMW NA for Service Offends Traditional Notions of Fair Play and Substantial Justice and the Territorial Limitations of the Due Process Clause. ..........14

    B.  Dismissal Under 12(b)(2)—Arigna Failed to Establish Jurisdiction Over BMW AG...................................................................................................17

1.    This Court Lacks Jurisdiction Over this Suit Until Service Is Properly Effectuated Under 4(k)(1)(A) in Accordance with the Texas Long-Arm Statute. ............................................. 17

2.    The Texas Long-Arm Statute's Explicit Notice Requirements for Service Require Mailing Documents Abroad. ........................................... 18

C.    Dismissal Under 12(b)(6)—Arigna Failed to State a Claim Against BMW AG. ........................................................................................................... 21

1.    Arigna Fails to Properly Plead Direct Infringement Acts Within the United States. ........................................................................................ 21

2.    Arigna Fails to Properly Plead Contributory Infringement Acts Within the United States. ...................................................................... 24

3.    Arigna Fails to Properly Plead Induced Infringement ............................ 25

D.    Dismissal Under 12(b)(7)—Arigna Failed to Join BMW NA as a Necessary and Indispensable Party. ......................................................... 27

1.    BMW NA Is an Indispensable Party ........................................................ 28

2.    BMW NA Is Not Subject to Venue in this District .................................. 30

V.    CONCLUSION—ARIGNA'S STRATEGIC CHOICES DOOM ITS ATTEMPT TO PROCEED AGAINST ONLY BMW AG IN THIS DISTRICT ............................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. AlliedSignal Gen. Aviation Avionics,*
  74 F.3d 882 (8th Cir. 1996) ...................................................................15, 19

*AGIS Software Dev., LLC v. ZTE Corp.,*
  No. 2:17-CV-00517, 2018 WL 4053897 (E.D. Tex. July 20, 2018) ...............5, 9, 10

*AGIS Software Dev., LLC v. ZTE Corp.,*
  No. 2:17-CV-00517, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018)....................14

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG,*
  No. 2:21-CV-00172 (E.D. Tex.) ....................................................... *passim*

*Arigna Tech. Ltd. v. Volkswagen AG et al,*
  No. 2:21-CV-00054 (E.D. Tex.) ....................................................... *passim*

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................6, 21, 22

*Bayoil Supply & Trading of Bahamas v. Jorgen Jahre Shipping AS,*
  54 F. Supp. 2d 691 (S.D. Tex. 1999) ...................................................20

*Bayou Steel Corp. v. M/V Amstelvoorn,*
  809 F.2d 1147 (5th Cir. 1987) ..........................................................10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)....................................................................6, 21

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.,*
  681 F.3d 1323 (Fed. Cir. 2012)........................................................7, 25

*BMW of North America, LLC v. Arigna Technology Limited,*
  IPR2021-01531 ...........................................................................4

*BOT M8 LLC v. Sony Corp. of Am.*
  4 F. 4th 1342 (Fed. Cir. 2021) ...........................................................22

*Cont'l Auto. Sys., Inc. v. Avanci, LLC,*
  No. 3:19-cv-02933-M, Dkt. 301 (N.D. Tex. July 5, 2020) (Ex. G)........................12

*Core Wireless Licensing S.A.R.L. v. Apple Inc,*
  6:14–CV–751, 2015 WL 5000397 (E.D. Tex. June 3, 2015) ............................26

*Dernick v. Bralorne Res., Ltd.*,
    639 F.2d 196 (5th Cir. 1981) ....................................................................28

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)................................................................27

*Duarte v. Michelin N. Am., Inc.*,
    No. 2:13-CV-00050, 2013 WL 2289942 (S.D. Tex. May 23, 2013)......................19

*E.E.O.C. v. Peabody W. Coal Co.*,
    400 F.3d 774 (9th Cir. 2005) ....................................................................30

4 Fed. Prac. & Proc. Civ. § 1068 Growth and Use of Long-Arm Statutes (4th ed.) ...................18

4B Fed. Prac. & Proc. Civ. § 1125 Service Outside State Pursuant to Federal
    Statutes (4th ed.) ....................................................................................18

14C Fed. Prac. & Proc. Juris. § 3723.1 Removal Based on Diversity of
    Citizenship and Alienage Jurisdiction—Fraudulent Joinder ............................16, 17

*Freeman v. Nw. Acceptance Corp.*,
    754 F.2d 553 (5th Cir. 1985) .................................................................8, 29

*Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*,
    3:17-cv-01827-N, 2018 WL 3330022 (N.D. Tex. Mar. 16, 2018) .........................17

*Gay v. AVCO Fin. Servs., Inc.*,
    769 F. Supp. 51 (D.P.R. 1991)....................................................................8

*Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*,
    933 F.3d 1302 (Fed. Cir. 2019)....................................................................6

*Global-Tech Appliances, Inv. v. SEB S.A.*,
    563 U.S. 754 (2011)..............................................................................7, 26

*GTG Holdings, Inc v. Amvensys Capital Grp., LLC*,
    No. 3:13-cv-3107-M, 2015 WL 4634557 (N.D. Tex. Aug. 3, 2015) .....................30

*H.S. Res., Inc. v. Wingate*,
    327 F.3d 432 (5th Cir. 2003) .................................................................7, 28

*Honeywell Int'l Inc. v. Acer Am. Corp.*,
    655 F. Supp. 2d 650 (E.D. Tex. 2009).......................................................6, 24

*IDS Prop. Cas. Ins. Co. v. Gree USA, Inc.*,
    No. 18-1313, 2018 WL 6605896 (D. Minn. Dec. 17, 2018) .............................14

*Innovative Display Techs. LLC v. Microsoft Corp.*,
    No. 2:13-CV-00783, 2014 WL 2757541 (E.D. Tex. June 17, 2014) .....................28

*Int'l. Energy Ventures Mgt. v. United Energy Grp.*,
    818 F.3d 193 (5th Cir. 2016) ........................................................18

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*,
    361 F.3d 1355 (Fed. Cir. 2004)......................................................6

*ITL Int'l, Inc. v. Constenla, S.A.*,
    669 F.3d 493 (5th Cir. 2012) .......................................................17

*In re Katrina Canal Breaches Litig.*,
    309 F. App'x 833 (5th Cir. 2009) (per curiam) ............................5

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)........................................................................6

*King v. Dogan*,
    31 F.3d 344 (5th Cir. 1994) .......................................................5, 9

*Kudu Co., Ltd v. Latimer*,
    No. 4:10-CV-680, 2011 WL 938349 (E.D. Tex. Feb. 22, 2011), *report and
    recommendation adopted sub nom, Kudu Co. v. Latimer*, No. 4:10-CV-680,
    2011 WL 933717 (E.D. Tex. Mar. 16, 2011) ............................5, 10

*Lopez v. Shearson Am. Exp., Inc.*,
    684 F. Supp. 1144 (D.P.R. 1988)....................................................8

*Macrosolve, Inc. v. Antenna Software, Inc.*,
    No. 6:11-CV-287, 2012 WL 12903085 ........................................20

*Magnacoustics Inc. v. Resonance Tech. Co.*,
    No. 97-1247, 132 F.3d 49, 1997 WL 592863, 1997 U.S. App. LEXIS 26498
    (Fed. Cir. Sep. 25, 1997)..............................................................15

*McDonal v. Abbott Lab'ys*,
    408 F.3d 177 (5th Cir. 2005) ........................................................16

*McFadin v. Gerber*,
    587 F.3d 753 (5th Cir. 2009) ..........................................................5

*Microsoft Corp. v. AT & T Corp.*,
    550 U.S. 437 (2007)..........................................................6, 21, 22

*Milgo Elec. Corp. v. United Bus. Commc'ns, Inc.*,
    623 F.2d 645 (10th Cir. 1980) ......................................................22

*United States ex rel. Miller v. Pub. Warehousing Co. KSC*,
    636 F. App'x 947 (9th Cir. 2016) ................................................12

*Hood ex rel. Mississippi v. City of Memphis, Tenn.*,
570 F.3d 625 (5th Cir. 2009) ...........................................................................7, 8

*MobileMedia Ideas LLC v. HTC Corp.*,
No. 2:10-cv-112, 2011 WL 4347037 (E.D. Tex. Sep. 15, 2011)...............................4

*Montana v. U.S.*,
440 U.S. 147 (1979)...............................................................................................23

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999)........................................................................................5, 9, 17

*Nationwide Mut. Ins. Co. v. Gree USA, Inc.*,
2019 No. CV 18-1105, 2019 WL 1244093 (W.D. Pa. Mar. 1, 2019)......................14

*New World Int'l, Inc. v. Ford Global Techs., LLC*,
859 F.3d 1032 (Fed. Cir. 2017)..................................................................5, 17, 18

*Newsome v. Gallacher*,
722 F.3d 1257 (10th Cir. 2013) ..............................................................................18

*Omni Capital Int'l v. Rudolf Wolff & Co.*,
484 U.S. 97 (1987)........................................................................................5, 13, 17

*Orange Theatre Corp. v. Rayherstz Amusement Corp.*,
139 F.2d 871 (3d Cir. 1944)....................................................................................10

*Polanco v. H.B. Fuller Co.*,
941 F. Supp. 1512 (D. Minn. 1996)...........................................................................8

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
843 F.3d 1315 (Fed. Cir. 2016).................................................................................7

*Pulitzer-Polster v. Pulitzer*,
784 F.2d 1305 (5th Cir. 1986) ..............................................................................7, 8

*RecoverEdge L.P. v. Pentecost*,
44 F.3d 1284 (5th Cir. 1995) ..................................................................................23

*Religious Tech. Ctr. v. Liebreich*,
339 F.3d 369 (5th Cir. 2003) ..................................................................................18

*S.E.C. v. Stanford Int'l Bank, Ltd.*,
776 F. Supp. 2d 323 (N.D. Tex. 2011) ..............................................................16, 19

*Sang Young Kim, v. Frank Mohn A/S*
909 F. Supp. 474 .....................................................................................................20

*Shaffer v. Heitner*,
433 U.S. 186 (1977) ....................................................................................................6

*Sheets v. Yamaha Motors Corp., U.S.A.*,
891 F.2d 533 (5th Cir. 1990) ...............................................................14, 17, 20

*Societe Nationale Industrielle Aerospatiale vs. U.S. Dist. Court for S. Dist. of
Iowa*,
482 U.S. 522 (1987) ..........................................................................................16, 19

*In re Southmark Corp.*,
163 F.3d 925 (5th Cir. 1999) ...................................................................................23

*Stragent, LLC v. BMW of N. Am., LLC*,
No. 6:16-CV-446, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) ......................7, 26

*Strange v. Text Ripple, Inc.*,
No. 19-10607, 2020 WL 12763078 (E.D. Mich. 8, 2020)......................................14

*Swift Chem. Co. v. Usamex Fertilizers, Inc.*,
No. 74-46, 1977 WL 22743 (E.D. La. Oct. 7, 1977) ...............................................22

*Terrestrial, v. NEC Corp.*,
No. 6:19-CV-00597, 2020 WL 3270832 (W.D. Tex. June 7, 2020) ................15, 19

*Tick v. Cohen*,
787 F.2d 1490 (11th Cir. 1986) ..............................................................................30

*Timberlake v. Synthes Spine, Inc.*,
No. V-08-4, 2011 WL 2607044 (S.D. Tex. Jun. 30, 2011) ......................................8

*Traxcell Techs., LLC v. Nokia Sols. & Networks US LLC*,
No. 2:18-CV-00412, 2019 WL 8137134 .................................................................20

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009)...............................................................................25

*In re Volkswagen Grp. Of Am., Inc.*,
28 F.4th 1203 (Fed. Cir. 2022) .............................................................2, 3, 23, 24

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988).................................................................................13, 14, 20

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
887 F.3d 1376 (Fed. Cir. 2018).............................................................................23

*Wilson v. Belin*,
20 F.3d 644 (5th Cir. 1994) ....................................................................................18

*Witherow v. Firestone Tire & Rubber Co.*,
 530 F.2d 160 (3rd Cir. 1976) ................................................................19

**Commission Cases**

*BMW NA Public Answer to ITC Complaint*,
 Inv. 337-TA-1267, at ¶¶ 3-4 (July 29, 2021) (Ex. H) ...........................21

**State Cases**

*Gen. Motors Corp. v. Superior Ct.*,
 15 Cal. App. 3d 81 (Ct. App. 1971) .......................................................12

*Tang v. CS Clean Sys. AG*,
 No. D052943, 2008 WL 5352253 (Cal. Ct. App. Dec. 23, 2008) ....................................11, 12

*Yamaha Motor Co. v. Super. Ct.*,
 174 Cal. App. 4th 264 (2009) .................................................................12

**Federal Statutes**

28 U.S.C. § 1659 .............................................................................................4

35 U.S.C. § 271(c) .................................................................................6, 7, 24

**State Statutes**

Cal. Corp. Code § 2110 ................................................................................11

Tex. Civ. Prac. & Rem. Code Ann. § 17.045 ..............................................18

Tex. Civ. Prac. & Rem. Code Ann. § 17.045(a) ..........................................19

**Rules**

Fed. R. Civ. P. 4 .....................................................................................13, 20

Fed. R. Civ. P. 4(e) .......................................................................................13

Fed. R. Civ. P. 4(e)(1) ............................................................................14, 20

Fed. R. Civ. P. 4(f)(3) ............................................................................14, 17

Fed. R. Civ. P. 4(h)(1) ...........................................................................14, 20

Fed. R. Civ. P. 4(k) .......................................................................................17

Fed. R. Civ. P. 4(k)(1)(A) ......................................................................17, 18

Fed. R. Civ. P. 4(k)(1)(B) .............................................................................17

Fed. R. Civ. P. 4(k)(1)(C) ................................................................................17, 18

Fed. R. Civ. P. 12(b)(2) ....................................................................................2, 5

Fed. R. Civ. P. 12(b)(5) ....................................................................................2, 5

Fed. R. Civ. P. 12(b)(6) ....................................................................................2, 6

Fed. R. Civ. P. 12(b)(7) .................................................................................2, 7, 8

Fed. R. Civ. P. 19 .........................................................................................7, 30

Fed. R. Civ. P. 19(a) ..........................................................................................7

Fed. R. Civ. P. 19(b) ...................................................................................7, 8, 28

## <u>STATEMENT OF ISSUES TO BE DECIDED BY THE COURT PURSUANT TO LOCAL RULE 7(a)(1)</u>

1) Whether the Court should dismiss this patent case under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process because Plaintiff Arigna Technology Ltd. failed to properly serve its Amended Complaint on Defendant Bayerische Motoren Worke AG.

2) Whether the Court should dismiss this patent case under Federal Rule of Civil Procedure 12(b)(2) because without proper service, this Court lacks jurisdiction over Defendant Bayerische Motoren Worke AG.

3) Whether the Court should dismiss this patent case under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff Arigna Technology Ltd.'s Amended Complaint fails to state a claim upon which relief can be granted because Defendant Bayerische Motoren Worke AG commits no alleged acts of infringement in the United States.

4) Whether the Court should dismiss this patent case under Federal Rule of Civil Procedure 12(b)(7) because Plaintiff Arigna Technology Ltd. failed to join BMW of North America, LLC, who is a necessary and indispensable party based on Arigna's direct and indirect infringement allegations.

I.    **INTRODUCTION – THE COMPLAINT IS DEFICIENT FOR INSUFFICIENT SERVICE, FAILURE TO STATE A CLAIM, AND FAILURE TO JOIN A NECESSARY AND INDISPENSABLE PARTY**

Arigna Technology Ltd.'s ("Arigna") has doomed its lawsuit by voluntarily dismissing BMW of North America LLC ("BMW NA") to preserve venue. Arigna seeks to pursue claims of patent infringement against Bayerische Motoren Worke AG ("BMW AG") for the importation and sale of certain BMW vehicles. However, BMW NA, not BMW AG, imports the accused vehicles and sells them in the United States. Therefore, without BMW NA, this case cannot go forward, for four independent reasons.

*First*, Arigna failed to properly serve BMW AG with its Amended Complaint.

*Second*, without proper service, this Court lacks jurisdiction over BMW AG.

*Third*, Arigna alleges that BMW AG commits acts of infringement "in the United States," but, as Arigna well knows, BMW AG's allegedly infringing acts—including selling, making, marketing, and distributing automobiles—occur outside of the U.S., and thus, are not subject to infringement laws in the U.S.

*Fourth*, in its transparent attempt to manipulate venue, Arigna's Amended Complaint fails to join necessary and indispensable party BMW NA, which is BMW AG's subsidiary. As the exclusive importer and distributor of BMW products in the U.S., the acts Arigna alleges to constitute infringement in the U.S. regarding, for example, the importation, sale, or offer for sale of any BMW products, would be committed by BMW NA (to the extent any are committed). And Arigna knows this, pleading that BMW AG acts through "subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas, including through its wholly owned U.S. subsidiary BMW of North America, LLC."  Dkt. 60, ¶3. Thus, Arigna's Amended Complaint necessarily makes BMW NA an indispensable party in this action. Arigna's strategic choice to omit BMW NA from this case because this Court would be an improper venue for BMW NA does

not make BMW NA any less necessary.

Arigna's strategic choices doom its Amended Complaint, warranting dismissal under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6), and 12(b)(7) for lack of service, jurisdiction, failure to state a claim, and failure to join a necessary and indispensable party.

## II.    FACTUAL BACKGROUND – THE COMPLAINT SUFFERS SEVERAL PROCEDURAL DEFICIENCIES

This is the third of three patent infringement lawsuits brought by Arigna against BMW AG[1] in the Eastern District of Texas, and the only one that has not been resolved by a dismissal for improper venue. All three proceedings are briefly summarized below to orient the Court to the history of these litigants.

Arigna first sued BMW AG on February 18, 2021, in *Arigna Tech. Ltd. v. Volkswagen AG et al*, No. 2:21-CV-00054 (E.D. Tex.) ("*Arigna I*"), naming both BMW AG and BMW NA as defendants. *Aringa I*, Dkt 1 (Ex. B). Arigna asserted the Eastern District of Texas was an appropriate venue because certain dealerships in the district—BMW of Tyler, Classic BMW, and BMW of Beaumont (the "Texas Dealerships")—were places of business for "BMW" (Arigna collectively defined BMW to mean BMW AG **and** BMW NA). *Id*. at ¶¶20-22.

BMW AG and BMW NA moved to dismiss for, *inter alia*, improper service and improper venue, respectively. *Aringa I*, Dkt 88, Dkt. 85. After Arigna completed service of process on BMW AG through the Hague Convention, BMW AG dropped its motion to dismiss for improper service. *Arigna I*, Dkt. 150. Months later, this Court stayed *Arigna I* pending the resolution of *In re Volkswagen Grp. Of Am., Inc.*, 28 F.4th 1203 (Fed. Cir. 2022) ("*In re Volkswagen*"), because the

---

[1] All of the proceedings between Arigna and BMW AG involved multiple defendants at the outset, as Arigna launched a wide-ranging assertion campaign against multiple automakers. For the sake of brevity and clarity, discussion of these other defendants are omitted, except to note that BMW AG is the sole remaining defendant in this action.

resolution of *In re Volkswagen* would likely assist the Court in resolving BMW NA's motion to dismiss for improper venue. *Arigna I*, Dkt. 464 at 1. And indeed, after *In re Volkswagen*, this Court concluded that "the factual record [in *Aringa I*] mirrors the record before the Federal Circuit in *In re Volkswagen*" and dismissed the BMW entities from *Arigna I* because Arigna could not establish an agency relationship between BMW NA and the Texas dealerships. *Arigna I*, Dkt. 468, at 2-3 n.2 (Ex. C) Arigna moved for reconsideration, *Arigna I*, Dkt. 471, which was denied, *Arigna I,* Dkt. 486.

Arigna sued BMW AG for the second time on May 20, 2021, in *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-CV-00172 (E.D. Tex.) ("*Arigna II*"), again naming BMW AG and BMW NA as defendants. *Arigna II*, Dkt. 1 (Ex. D). Again, Arigna asserted venue was proper because the Texas Delerships were places of business of BMW. *Id*. at ¶5. And again, BMW AG and BMW NA moved to dismiss for, *inter alia*, improper service and improper venue, respectively. *Arigna II*, Dkt 23, Dkt. 25. This time, Arigna chose not to serve BMW AG through the Hague Convention, instead insisting it could serve BMW AG by serving BMW NA in California. Dkt. 143. On the distinguishable facts of that case, the Court agreed and denied BMW AG's motion to dismiss for improper service. *Arigna II*, Dkt. 168 (Ex. E). However, *Arigna II* was then stayed pending *In re Volkswagen* and eventually dismissed as to both BMW AG and BMW NA because Arigna's venue allegations were factually indistinguishable from *In re Volkswagen,* and by extension, *Arigna I. Arigna II*, Dkt. 188 (Ex. F). Arigna moved for reconsideration, *Arigna II*, Dkt. 192, which was denied, *Arigna II*, Dkt. 200.

Arigna sued BMW AG for a third time on May 20, 2021 in *Arigna III*—the same day as *Arigna II*. Dkt. 1, Ex. D. Arigna again named BMW AG and BMW NA as defendants and brought the same venue allegations based on the same Texas dealerships as in *Arigna I* and *Arigna II*. Dkt.

1. However, because Arigna also sued BMW for allegedly infringing the same patent involved in this case (U.S. Patent No. 8,029,082) in the International Trade Commission (Inv. No. 337-TA-1267) this case has been stayed from the start under 28 U.S.C. § 1659. Dkt. 44. While *Arigna III* was stayed, the Court dismissed both *Arigna I* and *Arigna II* for improper venue as described above. Following the dismissals of *Arigna I* and *Arigna II*, Arigna unilaterally dismissed BMW NA from this case on December 21, 2022. Dkt. 55.

Meanwhile, the ITC investigation 337-TA-1267 terminated on December 7, 2022, with the ITC determining that BMW did not infringe the '082 patent, and that the asserted claims of the '082 patent were invalid. Dkt. 59, Ex. 2 at 3 (ITC Determination to Review and Affirm Final Initial Determination of No Violation). Arigna did not appeal the ITC's findings, however the parties agreed to stay this case pending the resolution of an *inter partes* review joined, but not filed, by BMW challenging all claims of the '082 patent—*BMW of North America, LLC v. Arigna Technology Limited*, IPR2021-01531 (PTAB). Dkt. 58. The Final Written Decision in IPR2021-01531 issued on March 9, 2023, finding no claims of the '082 patent unpatentable, and the parties subsequently negotiated a pleading schedule for Arigna to amend the complaint in light of the ITC investigation and voluntary dismissal of BMW NA as party. Dkt. 59. Arigna filed its Amended Complaint on March 31, 2023, Dkt. 60, and BMW AG now brings this motion to dismiss.

## III.    LEGAL STANDARD—FEDERAL RULES REQUIRE PROPER SERVICE STATING PROPER CLAIMS FOR PROPER PARTIES

"Motions to dismiss are purely procedural questions to which the Federal Circuit applies the law of the regional circuit." *MobileMedia Ideas LLC v. HTC Corp.*, No. 2:10-cv-112, 2011 WL 4347037, at *1 (E.D. Tex. Sep. 15, 2011) (citation omitted).

### A.    Rule 12(b)(5) – Arigna has not Properly Served its Original or Amended Complaint

Service of process is a procedural requirement which must be completed before a party is subject to the jurisdiction of a federal court. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Service of process must consist of both a complaint and a summons. *AGIS Software Dev., LLC v. ZTE Corp.*, No. 2:17-CV-00517, 2018 WL 4053897, at *1 (E.D. Tex. July 20, 2018). And, once a defendant challenges service, the plaintiff bears the burden of establishing its validity. *In re Katrina Canal Breaches Litig.*, 309 F. App'x 833, 835 (5th Cir. 2009) (per curiam).

Furthermore, an amended complaint renders an original complaint of no legal effect "unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). A party who appears yet timely contests service has not waived his right to challenge service. *Kudu Co., Ltd v. Latimer*, No. 4:10-CV-680, 2011 WL 938349, at *1 (E.D. Tex. Feb. 22, 2011), *report and recommendation adopted sub nom, Kudu Co. v. Latimer*, No. 4:10-CV-680, 2011 WL 933717 (E.D. Tex. Mar. 16, 2011).

### B.    Rule 12(b)(2)—Without Proper Service, This Court Lacks Jurisdiction

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Personal jurisdiction over a nonresident defendant not only must comport with the reach of the forum state's long arm statute in permitting service of process but also whether the assertion of such jurisdiction comports with due process. *New World Int'l, Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017). To satisfy the requirements of due process, the traditional notions of "fair play and substantial justice" must not be offended by the exercise of personal jurisdiction on the part of the court. *McFadin v. Gerber*, 587 F.3d 753, 759

(5th Cir. 2009); *see also Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1309 (Fed. Cir. 2019). And in judging jurisdiction a "court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

### C.    Rule 12(b)(6) – The *Iqbal/Twombly* Pleading Standard Requires More Than Conclusory Statements

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Further, the allegedly infringing actions must be performed within the United States. The Supreme Court has held that the traditional understanding is that our patent law "operate[s] only domestically and do[es] not extend to foreign activities[.]" *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 455 (2007). The Federal Circuit has also held that based on the express language of section 271(a), that section of the Patent Act does not apply to conduct outside of the U.S. *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1360 (Fed. Cir. 2004).

Contributory infringement similarly requires conduct within the United States. 35 U.S.C. § 271(c) ("Whoever offers to sell or sells **within the United States or imports into the United States** … shall be liable as a contributory infringer.") (emphasis added); s*ee also Honeywell Int'l Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 659 n.3 (E.D. Tex. 2009) ("[T]he Court rejects

Honeywell's argument that section 271(c) liability can extend to extra-territorial conduct."). Contributory infringement claims also fail if the accused products have substantial non-infringing use. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig*., 681 F.3d 1323, 1337 (Fed. Cir. 2012)

For induced infringement, one must plead (1) underlying direct infringement by another; and (2) that the defendant undertook an affirmative act to encourage infringement, with knowledge that its actions would cause infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016); *see also Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446, 2017 WL 2821697, at *3 (E.D. Tex. Mar. 3, 2017) (citing *Global-Tech Appliances, Inv. v. SEB S.A.*, 563 U.S. 754, 766 (2011) for the proposition that "it is not enough that an accused inducer merely intends to cause others to perform certain acts which are ultimately found to infringe.").

### D.    Rule 12(b)(7) – Necessary and Indispensable Parties Must Be Joined to a Lawsuit

If a party fails to join a necessary and indispensable party under Rule 19, then dismissal of the lawsuit under Rule 12(b)(7) is also proper. The movant bears the initial burden of demonstrating that an absent party is necessary, after which the burden then shifts to the party opposing joinder. *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009) (citing *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986)).

Determining whether to dismiss a case under Rule 12(b)(7) for failure to join a necessary and indispensable party requires a two-step inquiry. First, the Court must determine under Rule 19(a) whether a person should be joined to the lawsuit. *H.S. Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003). "If joinder is warranted, then the person will be brought into the lawsuit." *Id*. "But if such joinder would destroy the [C]ourt's jurisdiction, then the Court turns to Rule 19(b)

and determines "whether to press forward without the person or to dismiss the litigation." *Id.*; *see also Hood*, 570 F.3d at 629. "In circumstances where the litigation should not proceed without [the absent party], the federal suit should be dismissed." *Pulitzer*, 784 F.2d at 1308-09. Deciding whether an entity is an indispensable party is a highly-practical, fact-based endeavor . . . ." *Hood*, 570 F.3d at 628.

Joinder is necessary where a subsidiary "becomes more than a key witness whose testimony would be of inestimable value[, and i]nstead it emerges as an active participant" in the alleged tort. *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985). For instance, courts have found that "[f]oreign subsidiaries of domestic corporations that are responsible for the design, manufacture, sale, distribution, labeling, marketing, and foreign approval of foreign products are necessary parties . . ." in actions involving foreign products. *Timberlake v. Synthes Spine, Inc.*, No. V-08-4, 2011 WL 2607044, *2 (S.D. Tex. Jun. 30, 2011) (citing *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1521 (D. Minn. 1996); *see also, id.* (citing *Gay v. AVCO Fin. Servs., Inc.*, 769 F. Supp. 51, 56 (D.P.R. 1991) ("[W]here the subsidiary is an active participant in the activity alleged as the basis for recovery, the subsidiary should be a party to the action.") and *Lopez v. Shearson Am. Exp., Inc.*, 684 F. Supp. 1144, 1147 (D.P.R. 1988) ("The law appears very clear that where the subsidiary is the primary participant in a dispute involving both the parent and the subsidiary, the subsidiary is an indispensable party.")). Further, the court "may go outside the pleadings and look to extrinsic evidence such as documents or affidavits" when considering a Rule 12(b)(7) motion. *Timberlake*, 2011 WL 2607044, at *2 (internal quotation omitted).

## IV.    ARGUMENT—THE AMENDED COMPLAINT REMAINS UNSERVED, FAILS TO ESTABLISH JURISDICTION, FAILS TO PLEAD A CLAIM UPON RELIEF MAY BE GRANTED, AND IMPROPERLY RELIES ON A DISMISSED PARTY

### A.    Dismissal Under 12(b)(5)—Arigna Failed to Properly Serve BMW AG with

the Amended Complaint.

This case should be dismissed for improper service of process for three independent reasons. First, Arigna's Amended Complaint, which moots the original Complaint because it does not relate back to or incorporate by reference the original Complaint, has not been properly served. Second, Arigna's attempts at service in California prior to amending the Complaint via BMW NA and/or via BMW NA's service agent, CT Corporation, remain improper as neither entity is an authorized agent for BMW AG. Third, Arigna's manipulation of defendants in this case for venue purposes—i.e., initially relying on BMW NA for service of process and later dismissed BMW NA to avoid misvenue issues—offend the traditional notions of fair play and substantial justice. Arigna's Amended Complaint should be dismissed for improper service.

### 1. Arigna Has Yet to Effectuate Service of the Amended Complaint on BMW AG as the Original Complaint Is a Legal Nullity of No Effect.

As this Court ruled in *AGIS*, an "amended complaint supersedes the original complaint and renders it of no legal effect" unless the amended complaint "refers to and adopts or incorporates by reference the earlier pleading." *AGIS Software Dev., LLC*, 2018 WL 4053897, at *1 (E.D. Tex. July 20, 2018) (quoting *King*, 31 F.3d at 346). Arigna did not incorporate by reference or refer back to the original Complaint in the Amended Complaint. Dkt. 60. Therefore, Arigna's original Complaint, and service of same, is rendered without legal effect. *King*, 31 F.3d at 346 (5th Cir. 1994). This action should be dismissed because Arigna failed to serve BMW AG the Amended Complaint, and as such, this court cannot exercise jurisdiction over an improperly served party. *Murphy Bros.*, 526 U.S. at 350.

Arigna providing the Amended Complaint to counsel is also ineffective service. Rather than serving BMW AG the unincorporated Amended Complaint through conventional means of service, Arigna seeks a *de facto* alternative service—by email on counsel that have yet to appear

other than for the purpose of challenging service. Allowing service of an amended complaint on counsel who appears to contest service of the original complaint is incompatible with the principle that "[a] defendant need no longer appear specially to attack the court's jurisdiction over him." *Bayou Steel Corp. v. M/V Amstelvoorn*, 809 F.2d 1147, 1149 n.6 (5th Cir. 1987) (quoting *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871, 874 (3d Cir. 1944)). And, a party who appears yet timely contests service has not waived his challenge to service. *Kudu Co., Ltd.*, 2011 WL 938349, at *1. Arigna's service of its Amended Complaint on counsel for BMW AG relies on the faulty premise that BMW AG has waived its right to be properly served with a summons and complaint by appearing to challenge service in the first place. Not so. *See id*.

Alternative service by email to counsel is further improper because counsel for BMW AG have yet to appear in this case except to contest service. Dkt. 25 at 1 (stating service is "Contested"). On similar facts in the *AGIS* case, this Court already determined that plaintiff needs to serve a summons alongside the amended complaint (which Arigna failed to do). *AGIS*, 2018 WL 4053897, at *1. As such, Arigna's service of the Amended Complaint on counsel via ECF is deficient.

> **2. Arigna's Attempts at Service in California Prior to Amending the Complaint Via Unauthorized Agents BMW NA Were Insufficient and Further Failed to Comply with Texas Law.**

By removing BMW NA from this suit, Arigna now indirectly concedes that BMW NA cannot be a general manager for service of process for BMW AG under California law—and any previous attempts at service prior to amending the complaint via unauthorized agents for service or process, i.e., BMW NA, are ineffective. As discussed *supra* § II, this is the third of three lawsuits brought by Arigna against BMW AG—and like *Arigna I* and *Arigna II*, Arigna originally pleaded its claims collectively against BMW AG **and BMW NA**. Dkt. 1. Once *Arigna I* and *Arigna II* were both dismissed due to the misvenue of BMW NA, Arigna dismissed BMW NA and amended its

Complaint to remove BMW NA entirely, presumably to avoid suffering the same fate a third time. Dkt. 55. In doing so, and as discussed (§ IV.A.1), Arigna's Amended Complaint rendered invalid its initial attempts of service of process on BMW AG of the original Complaint that Arigna did not incorporate.

However, even if Arigna's initial service attempts of the original Complaint count for the Amended Complaint, those initial attempts were improper. Arigna purports to have served ***BMW AG*** the original (and now null) Complaint by serving in California ***BMW NA's*** registered agent, CT Corporation, on May 24, 2021. Dkt. 10. This is the same approach to service Arigna took in *Arigna II*, and which was permitted while BMW NA remained a named defendant alongside BMW AG. Ex. E at 6-10 (this Court finding that "BMW NA manages operations of BMW AG directly at issue in [that] case"). But Arigna chose to strategically remove BMW NA as a defendant, so any reliance on BMW NA for service now offends the Due Process clause (discussed below in § IV.A.3) and raises serious misjoinder issues (discussed below in § IV.D).

Nevertheless, service under California law of BMW AG via BMW NA remains improper. California statutes allow a plaintiff to serve a foreign corporation by delivering a copy of the process to its general manager. *See* Cal. Corp. Code § 2110 (West). A "general manager" within the meaning of California statute includes individuals and "distinct business entities that in effect manage the defendant's business affairs in California." *Tang v. CS Clean Sys. AG*, No. D052943, 2008 WL 5352253, at *4 (Cal. Ct. App. Dec. 23, 2008) (citation omitted). However, Arigna's attempted service of BMW AG through BMW NA, as BMW AG's "general manager," is defective

because BMW NA is not a "general manager" of BMW AG under California law. *See id.* at *5-6.[2]

Much like CSI in *Tang*, BMW NA has no "management responsibilities" for the BMW AG activities at issue in this lawsuit. BMW AG is accused of patent infringement because of its use of third-party Accused Devices that allegedly practice the asserted patent. BMW NA's operations are directed to importing vehicles, distributing BMW vehicles to dealers, and marketing and providing support for vehicles sold in the United States. BMW NA is not engaged in the design and manufacture of the accused BMW vehicles, and it has no involvement in the selection or use of the third-party Accused Devices at issue. Declaration of Bernhard Göbel (Ex. A) ¶ 6.

Stated differently, as in *Tang*, BMW NA cannot be a general manager over BMW AG's operations for purposes of service in this lawsuit because the alleged injury arose from operations (e.g., BMW AG incorporating components that allegedly include certain third-party Accused Devices into certain BMW products) that are divorced from any operations that BMW NA arguably "manage[s]" for BMW AG (e.g., vehicle distribution in the United States). 2008 WL 5352253, at *5. Because of its detachment from BMW AG's operations that led to this lawsuit, BMW NA is not "of sufficient character and rank to make it reasonably certain that [BMW AG] would be apprised of the service of process" in this particular matter. *Cf. Cont'l Auto. Sys., Inc. v. Avanci, LLC*, No. 3:19-cv-02933-M, Dkt. 301 at 2-5 (N.D. Tex. July 5, 2020) (Ex. G).

Additionally, even if service under California law was proper, service must also comply with the Texas long-arm statute (which it did not). It is axiomatic that the constitutional threshold

---

[2] Moreover, no consensus exists under California law as to whether a domestic subsidiary may qualify as a "general manager" of its foreign parent. *Compare Gen. Motors Corp. v. Superior Ct.*, 15 Cal. App. 3d 81, 86 (Ct. App. 1971), *with Yamaha Motor Co. v. Super. Ct.*, 174 Cal. App. 4th 264, 271 (2009); *see also United States ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 948 (9th Cir. 2016).

requirements are directly connected to the geographic forum of the suit and only extend to the limits authorized by the forum state's long-arm statute (i.e., ***Texas***).[3] The Supreme Court explained that "before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant ***and the forum***." *Omni Capital*, 484 U.S. at 104 (emphasis added). And the forum must have a sufficient relationship with the means of service because service is how a court asserts jurisdiction over the defendant. *Id*. The Supreme Court further confirmed in *Schlunk* that the means of service must conform with the ***forum state's*** long-arm statute (i.e., the Illinois long-arm statute since the case was filed in Illinois). *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706-07 (1988) (Although admittedly confusing, the Supreme Court distinguished between international "state" signatories to the Hague Convention and domestic U.S. "state" long-arm statute requirements).

In fact, to further underscore that Texas law controls, *not California law*, the pleadings only reference Texas forums and Texas activities. Dkt. 60, ¶¶ 19-20 ("This Court has personal jurisdiction over Defendant because Defendant conducts business in and has committed acts of patent infringement and/or induced others to commit acts of patent infringement ***in this District*** [and] ***the State of Texas***") (emphasis added). Again, service requires more than notice, and there must be a constitutionally sufficient relationship between the defendant and the forum. *Omni Capital*, 484 U.S. at 104. Yet, Arigna makes no effort connecting the pleadings in this suit with California (where it attempted service). The pleadings only support analysis under Texas law.

---

[3] Congress recognizes in the advisory committee notes that service under Rule 4(e) "does not conclusively establish the jurisdiction of the court over the person" and that jurisdiction is still subject to the "territorial limits of the court's reach set for in subdivision (k)." Fed. R. Civ. P. 4 Advisory Committee's Note to 1993 Amendment (noting that the "present territorial limits on the effectiveness of service to subject a defendant to the jurisdiction of the court over the defendant's person are retained").

Arigna's pre-Amended Complaint attempts at service failed to comport with the Texas long-arm statute. The Fifth Circuit has recognized that, barring alternative service under Rule 4(f)(3), service for Texas lawsuits must comport with the Texas long-arm statute. *See Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 537 (5th Cir. 1990). And in analyzing Rule 4(h)(1), and Rule 4(e)(1) therein, the Fifth Circuit directs that "courts are to look to the method of service prescribed by the internal law ***of the forum state***." *Id.* (citing *Schlunk*, 486 U.S. at 699-706) (finding that "courts are to look to the method of service prescribed by the internal law ***of the forum state***" by analyzing U.S. state long-arm statutes) (emphasis added). [4] Thus, Arigna's attempts at service fail under California law (if relevant at all) and remain non-compliant with the Texas long-arm statute.

### 3. Arigna's Reliance on Misvenued and Dismissed BMW NA for Service Offends Traditional Notions of Fair Play and Substantial Justice and the Territorial Limitations of the Due Process Clause.

In addition to circumventing the Texas long-arm statute, Arigna's manipulation of the parties in this suit for the purposes of service and venue further offend traditional notions of fair play and substantial justice, for which a dismissal is the appropriate remedy. This Court has dismissed an entire suit for the misvenue of a single defendant. *See AGIS Software Dev., LLC v. ZTE Corp.*, No. 2:17-CV-00517, 2018 WL 4854023 at *4 (E.D. Tex. Sept. 28, 2018) (citing

---

[4] Courts are split as to whether the "forum state" means the state where services are attempted, or the state where the action is pending. *Compare Strange v. Text Ripple, Inc.,* No. 19-10607, 2020 WL 12763078, at *1 (E.D. Mich. 8, 2020) ("service may be effectuated in this case by any means permitted under Michigan law"); *and IDS Prop. Cas. Ins. Co. v. Gree USA, Inc.*, No. 18-1313, 2018 WL 6605896, at *2 (D. Minn. Dec. 17, 2018) ("*Schlunk* plainly states that a court must look to the 'forum state's' internal law to determine whether foreign document transmittal abroad is required under the Hague Convention." (citation omitted)); *with Nationwide Mut. Ins. Co. v. Gree USA, Inc.,* 2019 No. CV 18-1105, 2019 WL 1244093, *10 n.1 (W.D. Pa. Mar. 1, 2019) *report and recommendation adopted*, 2019 WL 1243280 (W.D. Pa. Mar. 18, 2019) (finding the holding in *IDS Prop.* as "unpersuasive").

*Magnacoustics Inc. v. Resonance Tech. Co*., No. 97-1247, 132 F.3d 49, 1997 WL 592863, at *1, 1997 U.S. App. LEXIS 26498, at *4 (Fed. Cir. Sep. 25, 1997) ("Furthermore, as firmly established by judicial decisions, in an action involving multiple defendants venue and jurisdiction requirements must be met as to each defendant") (citation omitted)). And now Arigna improperly attempts to thread the needle between service and venue by voluntarily dismissing the misvenued BMW NA to avoid dismissal of the entire case, while still improperly relying on BMW NA for service (and for Arigna's infringement theories as addressed below in § IV.C-D). These legal gymnastics to avoid the territorial limitations of the Due Process clause embedded in threshold jurisdiction, venue, and service requirements, offend the traditional notions of fair play and substantial justice, and should be rejected.

Allowing Arigna to effectual service on a ***misvenued*** non-party, then dismiss that party once service is (ineffectively) completed offends the Due Process clause. Arigna used BMW NA's presence in this suit as a feint to avoid conventional means of service on BMW AG. Then, once service was completed, Arigna dropped its case against BMW NA to preserve this case in a district where BMW NA is misvenued. A plaintiff using an ephemeral party to circumvent service on another defendant, only then dismissing the ephemeral party to preserve venue, should not be condoned.

Moreover, notice is not the only requirement for the Due Process clause, as the "principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant." *Terrestrial, v. NEC Corp*., No. 6:19-CV-00597, 2020 WL 3270832 at *3 (W.D. Tex. June 7, 2020); *see also Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 884 (8th Cir. 1996) (finding that when service improper, a district court lacks jurisdiction over the defendant even if the defendant had actual

15

notice). And comity requires that district courts are to "demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *S.E.C. v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 334 n.19 (N.D. Tex. 2011) (quoting *Societe Nationale Industrielle Aerospatiale vs. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987)). Thus, any service attempts here on the foreign BMW AG defendant stemming through the misvenued non-party BMW NA disrespects the special problems confronted by BMW AG and the sovereign interests of Germany—and should not be permitted.

The closest analog here is the doctrine of improper joinder in diversity actions. Improper joinder, similar but distinct from misjoinder discussed in § IV.D below, occurs in a diversity action when a non-diverse party, against which no valid claim can be maintained, is added to a case solely for the purpose of inducing a remand to state court. *McDonal v. Abbott Lab'ys*, 408 F.3d 177, 183 (5th Cir. 2005) (finding removal proper in the face of improper joinder); *see generally* 14C Fed. Prac. & Proc. Juris. § 3723.1 Removal Based on Diversity of Citizenship and Alienage Jurisdiction—Fraudulent Joinder (Rev. 4th ed.).

The core principle discouraging improper joinder applies here: Arigna used BMW NA, which is not subject to venue in this district, for the purposes of serving BMW AG through unfairly shopping *California* service law to circumvent both the law of Arigna's chosen forum (Texas) and conventional and fair means of service, such as the Hague Convention. Thus, Arigna used BMW NA in this case only for improper service—Arigna named a misvenued party in its complaint, used that party solely for the purpose of serving process on another party, and then dismissed the misvenued party before any response was due. Dkt. 55. As in the doctrine of improper joinder, which evolved to prevent abuse of the automatic effect where a non-diverse party nominally

divests a federal court of federal subject-matter jurisdiction, the Court should prevent Arigna's use of BMW NA as a nominal party to unfairly effect service. *See* 14C Fed. Prac. & Proc. Juris. § 3723.1. To prevent this manipulation, this case should be dismissed.

### B. Dismissal Under 12(b)(2)—Arigna Failed to Establish Jurisdiction Over BMW AG.

The Court lacks jurisdiction over BMW AG because Arigna failed to effectuate service on BMW AG in accordance with the Texas long-arm statute. It is a fundamental legal concept that district courts cannot exercise jurisdiction over an improperly served defendant. *Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, 3:17-cv-01827-N, 2018 WL 3330022, at *2 (N.D. Tex. Mar. 16, 2018); *see also Murphy Bros.*, 528 U.S. at 350; and *Omni Capital*, 484 U.S. at 104. And jurisdiction over a nonresident defendant must comport with the reach of the forum state's long-arm statute. *New World*, 859 F.3d at 1037 (Fed. Cir. 2017). Arigna failed to effectuate service within accordance of the Texas long-arm statute (*see* § IV.A), thus this Court (sitting in Texas) lacks jurisdiction over this suit or BMW AG.

### 1. This Court Lacks Jurisdiction Over this Suit Until Service Is Properly Effectuated Under 4(k)(1)(A) in Accordance with the Texas Long-Arm Statute.

The Fifth Circuit continuously recognizes that, barring alternative service under Rule 4(f)(3), service for Texas lawsuits must comport with the Texas long-arm statute for there to be jurisdiction. *Sheets*, 891 F.2d at 537. Alternatively stated, until Arigna effectuates service in compliance with the Texas long-arm statute, this Court lacks jurisdiction over this suit.

A district court may assert jurisdiction over a defendant under Rule 4(k)—specifically 4(k)(1)(A).[5] *ITL Int'l, Inc. v. Constela, S.A.*, 669 F.3d 493, 497 (5th Cir. 2012). But jurisdiction

---

[5] Only Rule 4(k)(1)(A) applies here. Rule 4(k)(1)(B) does not apply because BMW AG was not joined. And with respect to Rule 4(k)(1)(C), where a federal statute does not provide for

under Rule 4(k)(1)(A) requires compliance with ***both*** the state's long-arm statute and the constitutional limitations on that state's jurisdictional reach. *See New World*, 859 F.3d at 1037 (Fed. Cir. 2017) ("A court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute permits service of process and the assertion of personal jurisdiction comports with due process"); *Int'l. Energy Ventures Mgt. v. United Energy Grp.*, 818 F.3d 193, 212 (5th Cir. 2016) ("A federal court may exercise personal jurisdiction over a nonresident defendant if [ ] the forum state's long-arm statute confers personal jurisdiction") (citations omitted); *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) ("This requires us to focus first on state law, and particularly, the relevant state's long-arm statute" which "establishes the extent to which the state intends its courts to exercise jurisdiction over nonresidents").

And as noted above (*see* § IV.A.2), Arigna failed to serve ***any*** complaint in this suit on BMW AG in accordance with the Texas long-arm statute.

### 2. The Texas Long-Arm Statute's Explicit Notice Requirements for Service Require Mailing Documents Abroad.

In Texas, unlike California, the long-arm statute extends ***beyond*** what due process requires by requiring service on foreign defendants to comply with additional notice requirements. *See Religious Tech. Ctr. v. Liebreich,* 339 F.3d 369, 373 (5th Cir. 2003)*;* Tex. Civ. Prac. & Rem. Code Ann. § 17.045 (notice for nonresidents requires "immediately mail[ing] a copy of the process to the nonresident").These additional requirements are necessary for this case to proceed as a state's judicial interpretations of the reach of its jurisdictional statutes are binding on the federal court. 4 Fed. Prac. & Proc. Civ. § 1068 Growth and Use of Long-Arm Statutes, (4th ed.); *see Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir. 1994) ("The reach of this jurisdiction is delimited by [ ] the state's

---

nationwide service, reliance on Rule 4(k)(1)(C) is improper—and the patent statute does not provide for nationwide service. 4B Fed. Prac. & Proc. Civ. § 1125 Service Outside State Pursuant to Federal Statutes (4th ed.).

long-arm statute"); *see also Duarte v. Michelin N. Am., Inc.*, No. 2:13-CV-00050, 2013 WL 2289942, at *2-4 (S.D. Tex. May 23, 2013) (even when an authorized agent was served pursuant to Texas law "it cannot be said that service is completed for purposes of conferring jurisdiction on the court until the documents have been transmitted abroad to the defendant").

Moreover, actual notice fails to satisfy the constitutional requirements for service. As "[w]hatever relevance 'notice' may have in a due process context, the controlling point is whether service was achieved under the substantive law of both agency and service of process." *Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160, 166 (3rd Cir. 1976). Again,[6] the "principles of comity encourage the court to insist . . . that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant." *Terrestrial*, 2020 WL 3270832 at *3; *see also Adams*, 74 F.3d at 884. Comity further requires that district courts "demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Stanford*, 776 F. Supp. 2d at 334 n.19 (quoting *Societe Nationale*, 482 U.S. at 546).

More specifically, regardless of how service is effectuated, to obtain personal jurisdiction over a foreign defendant, the Texas long-arm statute ***expressly requires*** transmittal of documents abroad to the foreign defendant. Tex. Civ. Prac. & Rem. Code Ann. § 17.045(a) ("If the secretary of state is served with duplicate copies of process for a nonresident, the documents shall contain a statement of the name and address of the nonresident's home or home office and the secretary of state ***shall immediately mail a copy of the process to the nonresident at the address provided***") (emphasis added); § 17.045(c) ("If the person in charge of a nonresident's business is served with process under Section 17.043, ***a copy of the process and notice of the service must be immediately***

---

[6] S*ee* § IV.A.3.

*mailed to the nonresident or the nonresident's principal place of business*.") (emphasis added); *see also Bayoil Supply & Trading of Bahamas v. Jorgen Jahre Shipping AS*, 54 F. Supp. 2d 691, 693 (S.D. Tex. 1999) ("If service is made pursuant to § 17.043, a copy of the process and notice of service must immediately be mailed to the nonresident or the nonresident's principal place of business").

In analyzing Rule 4(h)(1), and Rule 4(e)(1), the Fifth Circuit directs that "courts are to look to the method of service prescribed by the internal law *of the forum state*." *Sheets*, 891 F.2d at 536-37 (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699-706 (1998))(emphasis added). And the Fifth Circuit recognized that the transmittal of documents abroad required by the Texas long-arm statue "is precisely the type of service that *triggers the application of Hague Convention procedures*." *Sheets*, 891 F.2d at 537 (emphasis added). District courts in Texas also have concluded that the Texas long-arm statute requires service of documents on foreign defendants to comply with the Hague Convention. *Bayoil Supply*, 54 F. Supp. 2d at 693 ("Because Defendant is a foreign resident, notice must be mailed abroad, triggering the requirements of the Hague Convention."); *Traxcell Techs., LLC v. Nokia Sols. & Networks US LLC*, No. 2:18-CV-00412, 2019 WL 8137134, at *3 (same); *Macrosolve, Inc. v. Antenna Software, Inc.,* No. 6:11-CV-287, 2012 WL 12903085, at *2 (same); *Sang Young Kim, v. Frank Mohn A/S* 909 F. Supp. 474, 479-80 (same).

Congress intended for service to be effectuated under the Hague Convention as well. For instance, the 1993 amendment to Rule 4 expressly prioritized following the Hague Convention procedures. Fed. R. Civ. P. 4 Advisory Committee Note to 1993 Amendment. In fact, the "revision calls attention to the important effect of the Hague Convention . . . bearing on service of documents in foreign countries and favors the use of internationally agreed means of service." *Id*. Thus Federal

law and Congressional intent encourage service involve effecting service abroad for foreign defendants (thereby triggering further compliance with the Hague Convention)—service that is consistent with the Texas long-arm statute. As such, this Court lacks jurisdiction over BMW AG until Arigna comports with the Texas long-arm statute and serves BMW AG properly under the Hague.

### C. Dismissal Under 12(b)(6)—Arigna Failed to State a Claim Against BMW AG.

If Arigna's Amended Complaint is not dismissed for improper service, it should be dismissed because Arigna failed to plead sufficient facts to "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Amended Complaint included only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." *Id*. Furthermore, Arigna failed to plead infringement based on any acts of BMW AG that occur within the United States, and therefore its allegations for direct and contributory infringement should be dismissed. *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 455 (2007) (patent law limited to domestic effect).

#### 1. Arigna Fails to Properly Plead Direct Infringement Acts Within the United States.

As Arigna knows, BMW AG does not sell design, manufacture, distribute or import vehicles within or into Texas, or anywhere in the United States. Arigna's allegations against BMW AG are based entirely on the actions of subsidiary entities, such as BMW NA, which Arigna admits. Dkt. 60 at ¶3, *citing* BMW NA Public Answer to ITC Complaint, Inv. 337-TA-1267, at ¶¶ 3-4 (July 29, 2021) (Ex. H) ("BMWNA admits that it is the exclusive importer of BMW-brand vehicles into the United States.") *and* BMW AG Public Answer to ITC Complaint, Inv. 337-TA-1267, at ¶ 4 (Ex. I) ("BMWAG denies that it imports BMW-brand vehicles into the United States"). Therefore, the facts as pled by Arigna establish that BMW AG does not act within the United

States and, as such, Arigna cannot maintain a claim of direct infringement against BMW AG. *Microsoft Corp.*, 550 U.S. at 441 ("no infringement occurs when a patented product is made and sold in another country"); *see also BOT M8 LLC v. Sony Corp. of Am.* 4 F. 4th 1342, 1354 (Fed. Cir. 2021) ("Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim. As we have said before, while a plaintiff's pleading obligations are not onerous, it is possible that, in pleading its claims, a plaintiff may find it has pleaded itself out of court.") (internal footnote and citation omitted, emphasis original).

Nor does Arigna plead that BMW AG controls the operations of BMW NA. *See Milgo Elec. Corp. v. United Bus. Commc'ns, Inc.*, 623 F.2d 645, 660 (10th Cir. 1980) (parent liable for subsidiary's infringement where evidence showed an "overlapping business relationship controlled by" parent); *Swift Chem. Co. v. Usamex Fertilizers, Inc.*, No. 74-46, 1977 WL 22743, at *14 (E.D. La. Oct. 7, 1977) (parent liable for infringement carried out by subsidiary where parent "controlled virtually every phase of the subsidiary's operation"). Thus, the Amended Complaint fails to plead sufficient factual allegations from which the Court may draw a reasonable inference of direct or contributory infringement by BMW AG, the sole defendant. *Iqbal*, 556 U.S. at 678.

Finally, Arigna cannot argue that the Texas Dealerships are places of BMW AG. Arigna's Amended Complaint repeats, often verbatim, the same factual allegations concerning the same Texas Dealerships that Arigna pled in *Arigna I* and *II. Compare* Dkt. 60 at ¶¶6-18 with *Arigna I*, Dkt. 1 (Ex. B) at ¶¶21-33 and *Arigna II* Dkt. 1 (Ex. D) at ¶¶5-17. Arigna, however, is estopped from asserting that these dealerships are places of BMW AG, and therefore Arigna cannot plead direct or contributory infringement against BMW AG based on the actions of these dealerships.

Collateral estoppel, or issue preclusion, applies once a party has had a "full and fair opportunity to litigate" an issue, and prevents an estopped party from again raising that issue again, even against another party. *Montana v. U.S.*, 440 U.S. 147, 153–54 (1979). In patent cases, issue preclusion is governed by the law of the regional circuit, not the Federal Circuit. *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1382 (Fed. Cir. 2018). Issue preclusion in the Fifth Circuit is a three-part test: "(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action." *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999)(citing *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995)).

The issue at stake here in *Arigna III* is identical to the issue at stake in *Arigna I* and *Arigna II*—whether the Texas Dealerships are agents of BMW AG (or BMW NA) under a proper application of agency law, and thus whether the dealerships were "regular and established places of business" of BMW. Dkt. 60 at ¶6. As this Court found when dismissing *Arigna I*, "the factual record here mirrors the record before the Federal Circuit in *In re Volkswagen* and that Arigna's arguments have not shown the requisite level of control necessary to establish venue under an agency theory as explained by the Federal Circuit." Ex. C at 2 n.2; *see also* Ex. F at 2 n.1 (same). Yet Arigna repeats the same allegations from *Arigna I* and *Arigna II* that this Court rejected—that the Texas Dealerships are regular and established places of business of BMW—which requires a showing of agency. *In Re Volkswagen*, 28 F.4th at 1214.

Second, the question of agency was well litigated in both *Arigna I* and *Arigna II*. In both decisions the court considered extensive briefing from all involved parties, including a joint status report filed after *In re Volkswagen* where each party "set[] forth their positions regarding the effect

of *In re Volkswagen* on the overlapping venue disputes." Ex. C at 2; *see also* Ex. F at 2 ("[f]ollowing the filing of the Joint Status Reports, the Court…now considers the Motion, the related briefing, and the Federal Circuit's decision.")  Arigna also moved for reconsideration in both *Arigna I* and *II. Arigna I,* Dkt. 471 (motion for reconsideration), Dkt. 486 (denial of same); *Arigna II,* Dkt. 192 (motion for reconsideration), *Arigna II,* Dkt. 200 (denial of same).

Third, the determination of the agency issue was part of the judgment in *Arigna I* and *Arigna II*— indeed it was the central issue considered by this Court in the orders finding improper venue and dismissing both cases. Ex. C at 2-3; Ex. F at 2. As such, all three elements of issue preclusion are present here, and Arigna is estopped from relitigating whether the Texas Dealerships are agents or places of business of BMW AG or BMW NA.

In sum, Arigna does not and cannot plead a claim of direct infringement against BMW AG. Arigna's own pleading makes clear that BMW NA, not BMW AG, imports the accused products. And, Arigna does not plead that BMW AG controls the operations of BMW NA. Finally, Arigna is estopped from pleading that the Texas dealerships are agents, or places of business of BMW AG.

### 2. Arigna Fails to Properly Plead Contributory Infringement Acts Within the United States.

Arigna's allegations of contributory infringement against BMW AG fail on the same ground as Arigna's direct infringement allegations—Arigna does not identify conduct by BMW AG within the United States as required by 35 U.S.C. § 271(c) ("Whoever offers to sell or sells *within the United States or imports into the United States* … shall be liable as a contributory infringer.") (Emphasis added); s*ee also Honeywell Int'l Inc.* 655 F. Supp. 2d at 659 n.3 ("[T]he Court rejects Honeywell's argument that section 271(c) liability can extend to extra-territorial conduct."). Indeed, Arigna cannot identify conduct by BMW AG within the U.S. because BMW

AG is neither licensed nor authorized to do business anywhere in the U.S., and thus does not make, sell, offer for sale, use, and/or import the accused products within the U.S. Ex. A ¶¶7, 17.

Furthermore, to plead contributory infringement Arigna must "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d at 1337. "[T]he inquiry focuses on whether the accused products can be used for purposes other than infringement." *Id*. at 1338. If so, the claim of contributory infringement is defeated as a matter of law. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Here, Arigna pleads that the alleged infringing uses are the "Auto Start/Stop function" and "Engine-Off / Coasting" functions of the BMW X5. Dkt. 60, ¶43. However, the very figures Arigna cites to describe these features state ***both features can be turned off***. Dkt 60 Fig. 10 ("Depending on the selected driving mode the [Auto/Start Stop] system is ***automatically activated or deactivated***.") (emphasis added); *id*. Fig. 11 ("***Activating/deactivating*** coasting via shift paddles…To ***deactivate***, actuate the left shift paddle.") (emphasis added). Therefore the accused vehicles are capable of substantial non-infringing uses, and Arigna's claims of contributory infringement are nonstarters as a matter of law. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d at 1338-39. (Affirming dismissal of  contributory infringement claims where amended complaint made clear accused products had non-infringing uses.)

Therefore, because Arigna fails to plead conduct by BMW AG within the United States, and because Arigna's pleadings establish the accused products ***are*** capable of substantial non-infringing uses, Arigna's claims for contributory infringement should be dismissed.

### 3. Arigna Fails to Properly Plead Induced Infringement

Induced infringement requires more than a generic allegation that the defendant provide a product and instructions. Instead, the plaintiff must allege "the accused inducer specifically intends

for its customers to infringe the asserted patents; it is not enough that an accused inducer merely intends to cause others to perform certain acts which are ultimately found to infringe." *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446, 2017 WL 2821697, at *9 (E.D. Tex. Mar. 3, 2017), *report and recommendation adopted*, No. 6:16-CV-00446, 2017 WL 2832613 (E.D. Tex. Mar. 27, 2017) (citing *Global-Tech Appliances, Inc.* v. SEB S.A., 563 U.S. 754, 766 (2011)).

Here, Arigna's allegations do not meet the threshold to make out a claim for induced infringement, because Arigna does not plead the BMW AG had the intent for customers in the United States to infringe the asserted patent, and because the acts Arigna alleges are inducement are not performed by BMW AG.

BMW NA, not BMW AG, distributes the instructions Arigna alleges induce infringement, and thus BMW AG cannot induce infringement of BMW NA's customers within the U.S. BMW AG has no control over the accused vehicles during the importation and distribution within the U.S. Ex. A ¶17. Similarly, BMW AG provides BMW NA with general documentation concerning BMW vehicles, BMW NA regionalizes and distributes these documents, such as marketing materials, user manuals and service manuals, for and within the U.S. market. *Id*. at ¶¶17-18. Thus, the conduct Arigna alleges induces infringement is performed by non-party BMW NA, and Arigna fails to state a claim based on the actions of BMW AG

In addition to accusing the wrong party, Arigna merely pleads that BMW AG, by providing its customers with instructions for using the BMW X5's "Auto Start/Stop" and "Engine Off/Coasting" function, manifests an intent for those customers to infringe on a patent for correcting an offset of a current amplifier. Dkt. 60 at ¶¶42-43. Arigna's pleadings fail to explain how the instructions—which are provided to customers in the U.S. by BMW NA, not BMW AG— "direct customers to use those products in an infringing manner." *Core Wireless Licensing S.A.R.L.*

26

*v. Apple Inc*, 6:14–CV–751, 2015 WL 5000397 *4 (E.D. Tex. June 3, 2015). As such, Arigna's allegations of induced infringement are facially deficient and warrant dismissal.

Lastly, Arigna's repleading dooms any attempt to facially establish intent by BMW AG to cause infringement of the '082 patent. Arigna alleges BMW AG first had knowledge of the '082 patent as of May 20, 2021, when it filed the original Complaint Dkt. 60 at ¶43. However, the screenshots of alleged BMW documents Arigna uses in its Amended Complaint are the same screenshots it uses in its original Complaint, created **before** Arigna filed its original Complaint. *Compare* Dkt. 60 at Fig. 10, 11 *with* Dkt. 1 at Fig. 35, 36. (Fig. 11 and Fig. 36 both contain the footer for page 345 "01405A10FB7 – W20"). Arigna alleges that documents created **before** BMW AG knew of the '082 patent were made with the specific intent to cause infringement of that same patent. This, of course, is impossible, and the obvious contradiction necessitates dismissal of Arigna's induced infringement claim for failure to plead the requisite intent. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) ("The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent.").

Therefore, because (1) Arigna fails to plead acts conducted by defendant (other than those performed by a non-party), (2) Arigna fails to plead more than generic allegations that defendant provides a product and instructions, and (3) Arigna fails to plead that defendant had knowledge of the asserted patent, the inducement pleadings are fatally flawed and should be dismissed.

### D.  Dismissal Under 12(b)(7)—Arigna Failed to Join BMW NA as a Necessary and Indispensable Party.

The Amended Complaint should be dismissed for failure to join BMW NA as a necessary and indispensable party. BMW NA is the importer and U.S. distributor of BMW vehicles named in the Amended Complaint, and thus an indispensable party to this action. However, as venue is

improper for BMW NA in this District, this Court lacks the jurisdiction to join BMW NA, and so the present action must be dismissed in favor of a proper forum for all necessary parties.

### 1. BMW NA Is an Indispensable Party

BMW NA is a necessary party to this lawsuit. To determine the necessity of a party, the Court must determine "whether that person is indispensable, that is, whether litigation can be properly pursued without the absent party." *Innovative Display Techs. LLC v. Microsoft Corp.*, No. 2:13-CV-00783, 2014 WL 2757541, at *2 (E.D. Tex. June 17, 2014). Rule 19(b) lists the relevant factors for determining whether a case can proceed without an indispensable party:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or
> > (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FRCP 19(b). Generally, if a judgment would preclude an absent party from enforcing its rights or injuriously affect them, that party is indispensable. *H.S. Res., Inc.,* 327 F.3d at 439. Here, according relief to Arigna in BMW NA's absence would significantly prejudice BMW NA, which exclusively imports and distributes the Accused Products in the U.S. Ex. A ¶¶6, 17, 18. The prejudice to BMW NA cannot be avoided because an infringement finding in this case would effectively amount to an infringement finding against BMW NA.

Indeed, in similar circumstances, the Fifth Circuit has found that, when "the subsidiary was the primary participant in the events giving rise to the lawsuit," "[f]ailure to join the subsidiary in such circumstances would be improper." *Dernick v. Bralorne Res., Ltd*., 639 F.2d 196, 199 (5th Cir. 1981). Although the *Dernick* court ultimately held that the defendant's subsidiary was not an indispensable party because the parent company was the "principal actor," that is not the case here.

As discussed above,[7] **_and as Arigna pleads_**, BMW AG is not a primary actor here because BMW AG commits no acts of alleged infringement in the U.S., while BMW NA accounts for the alleged infringing activity by provides marketing materials, user manuals, service manuals, and other documentation regarding BMW vehicles to customers in the U.S. market, and is the exclusive importer and distributor of BMW vehicles in the U.S. Ex. A ¶¶ 17-18.

As the Fifth Circuit recognized in _Freeman v. Nw. Acceptance Corp._, when the plaintiff seeks to impose liability on a subsidiary for the acts of another entity, (as here, where Arigna attempts to impose liability on BMW AG for BMW NA's U.S. operations), that subsidiary becomes an "active participant" and "joinder of the subsidiary is required." 754 F.2d at 559. Further, _Freeman_ explains that the corporation's subsidiary, which was solely responsible for conduct complained of by the plaintiffs, was an indispensable party." _Id_. at 553.

In addition to Arigna's entwinning of BMW AG and BMW NA in its infringement theories, Arigna's attempted service of the original Complaint on BMW AG by serving BMW NA under a "General Manager" theory, reinforces the indispensable role of BMW NA in this action. In _Arigna II_, when BMW NA was a party, the Court found that "as the 'exclusive importer and distributor of [BMW AG] products in the United States'—BMW NA manages the operations of BMW AG directly at issue in this case." Ex. E at 10. Indeed, Arigna made this same point in _Arigna I_ as well—"BMW NA's [actions] are central to Arigna's injury." _Arigna I_, Dkt. 119 (Ex. J) at 15. Here, Arigna again entwines BMW AG and BMW NA in its infringement theory here by arguing BMW NA manages BMW AG's importation of accused vehicles. Thus, Arigna's pleading makes BMW NA necessary, and this case must proceed in a proper forum with both BMW AG and BMW NA.

---

[7] Supra § IV.C.1

Finally, Arigna has ample opportunity to obtain an adequate remedy if this action is dismissed for nonjoinder. Indeed, BMW NA already filed a declaratory judgment action in the District of Columbia where Arigna can litigate its entire dispute against both BMW entities.

Accordingly, as BMW NA performs the alleged conduct Arigna complains of in the U.S., not named defendant BMW AG, BMW NA is an indispensable party. Arigna's decision to dismiss BMW NA as a defendant to preserve venue, is nevertheless fatal to the Amended Complaint.

### 2.  BMW NA Is Not Subject to Venue in this District

Upon finding a party necessary, a district court must then determine if the joinder is infeasible. Fed. R. Civ. P. 19; *GTG Holdings, Inc v. Amvensys Capital Grp., LLC*, No. 3:13-cv-3107-M, 2015 WL 4634557, at *2 (N.D. Tex. Aug. 3, 2015). Under Rule 19, joinder is not feasible: (1) when venue is improper; (2) when the absentee is not subject to personal jurisdiction; or (3) when joinder would destroy subject matter jurisdiction. *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005); *Tick v. Cohen*, 787 F.2d 1490, 1493 (11th Cir. 1986). This Court recently found in *Arigna I* and *II* that venue is improper in this District over BMW NA, as BMW NA is not incorporated in Texas nor does it have a place of business in this District. *See* supra § IV.C.1. Thus, BMW NA cannot be joined to this case. *Peabody*, 400 F.3d at 779; *Tick*, 787 F.2d at 1493 (11th Cir. 1986).

### V.    CONCLUSION—ARIGNA'S STRATEGIC CHOICES DOOM ITS ATTEMPT TO PROCEED AGAINST ONLY BMW AG IN THIS DISTRICT

Arigna's attempt to preserve venue by dismissing BMW NA has nevertheless fatally injured this case because BMW NA is essential for this case to proceed, on multiple independent grounds. For the foregoing reasons, BMW AG respectfully requests that the Court dismiss Arigna's Amended Complaint.

Dated: May 1, 2023

Respectfully submitted,

*/s/Lionel M. Lavenue*

Lionel M. Lavenue
Virginia Bar No. 49,005
lionel.lavenue@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190
  Phone:  (571) 203-2700
  Fax:     (202) 408-4400

**ATTORNEY FOR DEFENDANT
BAYERISCHE MOTOREN WERKE AG**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2023, I caused the foregoing **DEFENDANT BAYERISCHE MOTOREN WERKE AG'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(2), 12(b)(5), 12(b)(6), AND 12(b)(7)** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue