## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ARIGNA TECHNOLOGY LIMITED, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.  2:21-CV-00173-JRG** |
| | § | |
| BAYERISCHE MOTOREN WERKE AG, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Bayerische Moteren Werke AG's ("BMW") Motion to Dismiss (the "Motion"). (Dkt. No. 64.) In the Motion, BMW moves this Court to dismiss Plaintiff Arigna Technology Limited's ("Arigna") First Amended Complaint under Federal Rule of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6), and 12(b)(7). Having considered the Motion, the subsequent briefing, and for the reasons stated herein, the Court is of the opinion that the Motion should be **DENIED**.

Also before the Court is Defendant BMW's Motion for Protective Order. (Dkt. No. 72.) In the Motion for Protective Order, BMW requests that discovery be stayed until Arigna effects service properly or this Court otherwise resolves these jurisdiction and service issues. (*Id.* at 2.) Since this order resolves the jurisdiction and service issues, the Court is of the opinion that the Motion for Protective order should be **DENIED AS MOOT**.

## I.    BACKGROUND

Arigna filed three patent infringement lawsuits against BMW and several other defendants in 2021. Arigna first sued BMW on February 18, 2021, in *Arigna Tech. Ltd. v. Volkswagen AG et al*, No. 2:21-CV-00054 (E.D. Tex.) ("*Arigna I*"). Arigna filed its second suit on May 20, 2021.

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-CV-00172 (E.D. Tex.) ("*Arigna II*"). The above captioned case ("*Arigna III*"), was also filed on May 20, 2023, the same day as *Arigna II*. In all three cases, Arigna sued both BMW and BMW of North America LLC ("BMW NA"), BMW's wholly owned subsidiary. On July 12, 2021, this case (*Arigna III*) was stayed pending an ITC investigation concerning the only asserted Patent. (Dkt. No. 44.) *Arigna I* and *Arigna II* proceeded while this case was stayed.

In both *Arigna II* and *Arigna III*, Arigna served both BMW and BMW NA the original summons and complaint by serving BMW NA's registered agent CT Corporation. BMW moved to dismiss for improper service in *Arigna II* under Rule 12(b)(5). *Arigna II*, Dkt. 23. *Arigna III* was already stayed when the *Arigna II* Motion to Dismiss under Rule 12(b)(5) was filed. In the *Arigna II* Motion to Dismiss, BMW argued that CT Corporation was the registered agent of BMW NA, not BMW, and Arigna could not use CT Corporation for service of BMW. *Id.* Further, BMW argued that Arigna was required to effectuate service under the laws of Texas, the forum state, which would require transmitting documents abroad to BMW as a foreign defendant. *Id.* The Court denied the motion on the 12(b)(5) grounds, finding (1) that the Federal Rules permit service according to the law of the state where service is made, (2) that California law permits service of a foreign defendant by serving that party's domestic "general manager," and (3) that BMW NA was BMW's "general manager" under the laws of California such that BMW could be served through BMW NA. *Arigna II*, Dkt. 168.

Subsequently, BMW and BMW NA filed a motion to dismiss for improper venue in *Arigna I* and *Arigna II*. This Court granted the motions, finding that venue was improper as to BMW NA in light of the Federal Circuit's opinion in *In re Volkswagen Grp. Of Am., Inc.*, 28 F.4th 1203 (Fed. Cir. 2022). *Arigna I*, Dkt. 468; *Arigna II*, Dkt. 188.  Consequently, the Court dismissed the cases

as to both BMW NA and BMW. *Id.* Following these dismissals, Arigna unilaterally dismissed BMW NA from *Arigna III*, leaving BMW as the sole defendant. (Dkt. No. 55.)

The Court lifted the stay on *Arigna III* following the conclusion of the ITC investigation and a subsequent *inter partes* review if the asserted Patent. Thereafter, BMW allegedly requested that Arigna file an amended complaint to correctly identify and reflect that BMW NA was no longer a party. (Dkt. No. 66 at 3-4.) Arigna purports to have complied despite its objection that no such amendment was necessary. (*Id.* at 4.) Arigna filed its First Amended Complaint on March 31, 2023, removing the dismissed parties. (Dkt. No. 60.) BMW then filed the present Motion to Dismiss on the grounds of improper service, lack of jurisdiction, failure to state a claim, and failure to join a necessary and indispensable party. (Dkt. No. 64.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Under Rule 12(b)(5)

In order for a court to exercise jurisdiction over a defendant, a plaintiff must serve that defendant with process according to Rule 4 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4. In the absence of such process, a defendant may move to dismiss a case under Federal Rule of Civil Procedure 12(b)(5). *See Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999). In order to avoid dismissal, the plaintiff must make a *prima facie* showing of proper service. *Carimi v. Royal Carribean Cruise Line, Inc*., 959 F.2d 1344, 1346 (5th Cir. 1992).

Under Rule 4(e)(1), a party may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). "Federal Rule of Civil Procedure 5, not Rule 4, governs service of 'every pleading subsequent to the original complaint.'" *Johnson v. Crown Enterprises, Inc*., 398 F.3d 339 (5th Cir. 2005) (quoting Fed. R. Civ. P. 5(b)). If a party is

represented by an attorney, service under Rule 5 may be made on the attorney via the Court's electronic-filing system unless the court orders service on the party. Fed. R. Civ. P. 5(b).

California law authorizes service on a foreign corporation by delivering the summons and the complaint to the corporation's domestic "general manager," which California law defines as a person or entity who (1) is "of sufficient character and rank to make it reasonably certain that defendant would be apprised of the service" and (2) has "given [the defendant] substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state." *Cosper v. Smith & Wesson Arms Co.*, 53 Cal. 2d 77, 83-84 (1959).

### B.      Motion to Dismiss Under Rule 12(b)(2)

"A court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute permits service of process and the assertion of personal jurisdiction comports with due process." *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017); *see Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,* 818 F.3d 193 (5th Cir. 2016). Since Texas's long-arm statute extends to the limits of federal constitutional due process, only the latter inquiry is required. *Id.* For personal jurisdiction to comport with due process, the nonresident defendant must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.*; *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### C.      Motion to Dismiss Under Rule 12(b)(6)

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court can dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*,

764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff but is not required to accept the plaintiff's legal conclusions as true. *Id*. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 550 U.S. at 555.

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "The court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'" *Script Sec. Sols. L.L.C. v. Amazon.com*, *Inc*., 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

In the context of patent infringement, a complaint must place the alleged infringer on notice of what activity is being accused of infringement. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). However, the plaintiff is not required to prove its case at the pleading stage. *Id.* Assessing the sufficiency of pleadings is a context specific task; simpler technologies may require less detailed pleadings, while more complex technologies may demand more. *Disk Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

### D.      Motion to Dismiss Under Rule 12(b)(7)

"[A] Rule 12(b)(7) analysis entails two inquiries under Rule 19." *H.S. Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003). First, the Court must determine under Rule 19(a) whether a person should be joined to the lawsuit. *Id*.

A party is necessary under Rule 19(a)(1) if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

"If joinder is warranted, then the person will be brought into the lawsuit." *Wingate*, 327 F.3d at 439. "But if such joinder would destroy the [C]ourt's jurisdiction, then the Court turns to Rule 19(b) and determines "whether to press forward without the person or to dismiss the litigation." *Id*. The factors in a Rule 19(b) analysis include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate; and
(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

### III.    DISCUSSION

BMW moves this Court to dismiss this case for improper service, lack of jurisdiction, failure to state a claim, and failure to join a necessary and indispensable party. The Court addresses each in turn.

### A.    BMW's Motion to Dismiss Under 12(b)(5)

BMW asserts that the case should be dismissed under Rule 12(b)(5) for improper service. BMW asserts four primary reasons for dismissal on these grounds: (1) Arigna failed to serve its Amended Complaint under Rule 4; (2) Arigna failed to effectuate service under California law because BMW NA is not BMW's "general manager;" (3) Arigna failed to comply with Texas service law; and (4) Arigna's "legal gymnastics" offend the traditional notions of fair play and substantial justice of the due process clause. The Court disagrees that service was improper for the following reasons.

### 1.    Rule 5, not Rule 4, applies to the service of an amended complaint.

First, BMW argues that Arigna was required to serve its Amended Complaint under Rule 4. BMW points out that the Amended Complaint does not relate back to or incorporate by reference the original Complaint. (Dkt. No. 64 at 9.) According to BMW, the failure to relate back to or incorporate by reference the original Complaint not only moots the substance of the original Complaint, but it also renders the service without legal effect. (*Id.*) Since Arigna failed to incorporate by reference its original Complaint, BMW asserts that Arigna was required to serve its Amended Complaint under Rule 4. However, Arigna only served the Amended Complaint to counsel via the Court's electronic filing system, allegedly rendering the service ineffective. (*Id.*)

Arigna responds that Rule 5, not Rule 4, governs the service of every pleading subsequent to the original complaint. (Dkt. No. 66 at 9) (citing *Johnson*, 398 F.3d at 344). Arigna argues that once a complaint has been properly served on a defendant pursuant to Rule 4, service of an

amended complaint need only comply with Rule 5, which allows for service on counsel via the Court's electronic filing system. (*Id.*)

The Court agrees with Arigna. Rule 5, not Rule 4, applies to "every pleading subsequent to the original complaint." *Johnson*, 398 F.3d at 344; Fed. R. Civ. P. 5. The failure to incorporate by reference or relate back nullifies the substance of an original complaint, but the Court is not persuaded that such extends to the ***service***. Rather, the plain language of Rule 5 indicates that it is the rule to govern amended pleadings after Rule 4 service has been properly completed. Fed. R. Civ. P. 5. Once effective Rule 4 service is complete, all subsequent pleadings are properly served under Rule 5. *Id*. Arigna completed its Rule 4 service with its original Complaint, and Arigna served the Amended Complaint under Rule 5 by serving it to counsel via the Court's electronic filing system. Accordingly, Arigna's service of the Amended Complaint was proper.

### 2. Arigna properly served the original Complaint under Rule 4 by complying with California law.

BMW argues that the Amended Complaint should be dismissed because the original Complaint was not properly served under California law rendering subsequent attempts at Rule 5 service ineffective. Under California law, service of a complaint on a foreign party's "general manager" is sufficient to effectuate service on the foreign party themselves. *Cosper*, 53 Cal. 2d at 83-84. Arigna claims to have served the original Complaint on BMW by serving the complaint on its "general manager," BMW NA. Indeed, the Court found that such a method of service was proper in *Arigna II*. *Arigna II*, Dkt. 168. Despite this holding, BMW argues again that BMW NA is not a "general manager" for BMW under California law. (Dkt. No. 64 at 10-12.) BMW argues that because Arigna dropped BMW NA from the suit, "Arigna now indirectly concedes that BMW NA cannot be a general manager." (*Id.* at 10.) BMW further argues that BMW NA is not a general manager because BMW NA has no "management responsibilities" for BMW concerning activities

at issue in this lawsuit. (*Id.* at 11-12) (citing *Tang v. CS Clean Sys. AG*, No. D052943, 2008 WL 5352253, at *4 (Cal. Ct. App. Dec. 23, 2008)).

In response, Arigna points out that this Court has already found that BMW NA is BMW's "general manager" capable of accepting service under California law in *Arigna II*. (Dkt. No. 66 at 6-7) (citing *Arigna II*, Dkt. 168.) Arigna argues that the Court should find here, as it did in *Arigna II*, that BMW NA is a general manager for BMW and that service was proper.

The Court agrees with Arigna. The Court is not persuaded that Arigna's dismissal of BMW NA is tantamount to an admission that BMW NA is not a general manager. Further, BMW NA can be a general manager for BMW regardless of whether BMW NA is joined to the suit.[1] California law defines a general manager as a person or entity who (1) is "of sufficient character and rank to make it reasonably certain that defendant would be apprised of the service" and (2) has "given [the defendant] substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state." *Cosper*, 53 Cal. 2d at 83-84. Neither *Cosper* factor requires the general manager to be a party to the suit or require that the general manager have "management responsibilities" related to activities at issue in the suit.

BMW relies on *Tang* to argue that BMW NA is not its general manager. *Tang* is an unpublished opinion that California courts are prohibited from citing under California Rules of Court 8.1115. The Court finds it more appropriate to perform the analysis using the *Cosper* factors, as it did in *Arigna II*. As the Court determined in *Arigna II*, BMW NA is a general manager for BMW under the *Cosper* factors.

---

[1] Even if there were a requirement that a general manager be party to the suit, the Court finds that service would still be proper in this case since BMW NA was a party to this suit when Arigna served BMW through BMW NA under Rule 4.

For the above reasons and the reasons stated in *Arigna II*, the Court finds that BMW NA is a general manager for BMW, California law authorizes service upon a general manager, and Arigna properly served BMW via its general manager, BMW NA. *See Arigna II*, Dkt. 168.

### 3.    Arigna was not required to comply with Texas service law.

BMW argues that Arigna was required to comply with Texas law in serving the complaint. It argues that Arigna was required to follow the Texas long-arm statute's service provisions, specifically Texas Civil Code § 17.045, which requires transmitting documents abroad to a foreign defendant. BMW bases its argument on an interpretation of *Sheets v. Yamaha Motors Corp., U.S.A.* and *Volkswagenwerk Aktiengesellshcaft v. Schlunk. See* 891 F.2d 533 (5th Cir. 1990); 486 U.S. 694 (1988). BMW argues that *Schlunk* mandates looking to the law of "the forum state" when determining whether service requires transmitting documents abroad, and *Sheets* mandates that "service for Texas lawsuits must comport with the Texas long-arm statute for there to be jurisdiction." (Dkt. No. 64 at 14).

This Court already rejected this argument in *Arigna II*. *Arigna II*, Dkt. 168. As this Court has explained, the references to "state" in *Schlunk* refer to signatory states under the Hague, i.e., countries. *See Arigna II*, Dkt. 168 at 5-6; *Schlunk*, 486 U.S. at 700 ("The Convention does not prescribe a standard, so we almost necessarily must refer to the internal law of the forum state"). Neither *Sheets* nor *Schlunk* deal with the issue at hand: the attempted service of a foreign corporation through its domestic subsidiary outside the forum state.[2]

 "In determining whether service involves the transmittal of documents abroad, courts are to look to the method of service prescribed by the internal law of the forum state," which in this

---

[2] In *Sheets* and *Schlunk*, the Court analyzed the service under the Louisiana and Illinois long-arm statutes respectively when service had been performed pursuant to the Louisiana and Illinois long-arm statutes. *See* 891 F.2d 537; 486 U.S. at 696, 707-08. Neither case analyzed what law applies when service is performed pursuant to the law where service was made.

case is the United States. *See Schlunk*, 486 U.S. at 700. Service on a foreign corporation, partnership, or association is controlled by Federal Rule of Civil Procedure 4(h). Rule 4(h) contemplates two scenarios: service on a foreign corporation made (1) at a place within a judicial district of the United States or (2) at a place outside the United States. Fed. R. Civ. P. 4(h)(1)-(2). In the former scenario, a "foreign corporation, or a partnership or other unincorporated association . . . must be served . . . in a judicial district of the United States . . . in a manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1), in turn, permits an individual to be "served in a judicial district of the United States by . . . following state law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located *or where service is made*." Fed. R. Civ. P. 4(e)(1) (emphasis added).

Arigna properly served BMW under California law by serving its general manager BMW NA.  Arigna was not required to transmit documents abroad under Texas Civil Code § 17.045. Rule 4(e)(1) governs service in this case. The plain language of Rule 4(e)(1) permits Arigna to perform service under California law *instead* of serving under Texas law. Accordingly, the Court finds that service was proper in this case.

#### 4.    **Arigna has not violated the due process clause.**

BMW argues that Arigna is playing "legal gymnastics," serving the original Complaint on BMW NA (a "misvenued non-party") to effectuate service BMW and then dropping BMW NA to avoid a finding of improper venue. (Dkt. No. 64 at 15.) BMW contends this offends the traditional notions of fair play and substantial justice of the due process clause and constitutes grounds for dismissal. BMW likens the current situation to improper joinder, accusing Arigna of suing BMW NA for the purposes of serving BMW to circumvent fair means of service, such as the Hague Convention. (*Id.* at 16.)

The Court is not persuaded that Arigna is engaged in "legal gymnastics." *Arigna I*, *Arigna II*, and *Arigna III* were all filed around the same time, naming both BMW and BMW NA as defendants before this Court had made any determinations about venue. Further, as explained above, Arigna could have properly served BMW under California law by serving BMW NA, whether BMW NA was party to the suit or not. The Court is not convinced that BMW NA was added as a party for the purpose of circumventing the Hague Convention, or any other improper purpose. BMW's suspicions are merely that—suspicions. Suspicions alone will not support dismissal.

Arigna properly served the original Complaint under Rule 4 in compliance with California law, and it properly served the Amended Complaint under Rule 5 by serving it to counsel via the Court's electronic filing system. Thus, the Court finds that service in this case was proper.

### B.      BMW's Motion to Dismiss Pursuant to Rule 12(b)(2)

BMW also moves this Court to dismiss for lack of personal jurisdiction under Rule 12(b)(2). BMW argues that this Court lacks jurisdiction over BMW and/or this case because Arigna failed to comply with the service requirements under the Texas long-arm statute. (Dkt. No. 64 at 17.) BMW argues that since the Court cannot exercise jurisdiction over an improperly served defendant, the Court allegedly cannot exercise jurisdiction here. (*Id.*)

BMW argues that the Texas long-arm statute extends beyond the minimums of constitutional due process by requiring that service on foreign defendants comply with "additional notice requirements," and Arigna failed to comply with these "additional notice requirements." (Dkt. No. 64 at 18). Specifically, BMW argues that the Texas long-arm statute expressly requires transmittal of documents abroad to a foreign defendant, triggering the Hague Convention procedures. (*Id.* at 19) (citing Tex. Civ. Prac. & Rem. Code Ann § 17.045).

Arigna argues that BMW confuses the analysis by conflating Texas *service* law with Texas *due process* law. (Dkt. No. 69 at 4.) Specifically, for *service* to be proper under Rule 4, Arigna was required to serve under the law of the forum state (Texas) *or* the law of the state where service was made (California). (*Id.* at 3.) Arigna argues it need not comply with the *service* requirements of the Texas long-arm statute because it elected to serve the complaint under California law, not Texas. (*Id.*) Regarding *due process*, Arigna contends the appropriate analysis is whether (1) the Texas long-arm statute confers personal jurisdiction and (2) whether personal jurisdiction comports with federal due process. (*Id.*) Arigna argues that it is clear that the Texas long-arm statute extends only to the limits of federal constitutional minimum requirements. (*Id.*) Since the Texas long-arm statute is coextensive with the federal due process inquiry, the Texas long-arm statute is satisfied when defendant has sufficient minimum contacts to comport with federal due process. (*Id.*)

The Court agrees with Arigna. As a preliminary matter, the Court notes that BMW moves this Court to dismiss under 12(b)(2) largely due to Arigna's alleged failure to *serve* its original summons and complaint according to the *service* requirements of the Texas long-arm statute. As it did under its 12(b)(5) arguments, BMW argues that Arigna failed to comply with Texas Civil Code § 17.045, and that "[i]t is a fundamental concept that district courts cannot exercise jurisdiction over an *improperly served* defendant." (Dkt. No. 64 at 17). There is significant overlap in the arguments and authorities for BMW's 12(b)(5) and 12(b)(2) arguments. (*Id.* at 12-13) (arguing under its 12(b)(5) arguments that "service must also comply with the Texas long-arm statute" and "before a court may exercise *personal jurisdiction* over a defendant, there must be more than notice"); (*Id.* at 17) (arguing under its 12(b)(2) arguments that "*service* for Texas lawsuits must comport with the Texas long-arm statute for there to be jurisdiction"). While improper service can eliminate a court's jurisdiction, improper service is challenged under Rule 12(b)(5), not Rule

12(b)(2), and the Court has already found that service was proper. Personal jurisdiction, separate from proper service, is able to be challenged under Rule 12(b)(2).

To determine if this Court has personal jurisdiction, the Court must consider (1) whether personal jurisdiction is proper under the Texas long-arm statute and (2) whether the assertion of personal jurisdiction comports with due process under the Fourteenth Amendment. *New World Int'l*, 859 F.3d at 1037; *Int'l Energy Ventures*, 818 F.3d at 212. Both the Fifth Circuit and Federal Circuit recognize that the Texas long-arm statute's personal jurisdiction inquiry is coextensive with the federal due process inquiry, and thus this Court need only analyze whether personal jurisdiction comports with federal due process. *See id.* For personal jurisdiction to comport with federal due process, a nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316.

Here, BMW has minimum contacts with the forum by "deliver[ing] [accused] product[s] into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2014). Further, there is a nexus between these minimum contacts and Arigna's claims of patent infringement in this case. The Court finds that jurisdiction is fair and reasonable. As a result, the Court has personal jurisdiction over BMW.

BMW does not dispute that personal jurisdiction is proper under the federal due process inquiry. Instead, BMW challenges the established precedent that the Texas long-arm statute is coextensive with federal due process, arguing that the service requirements in the Texas long-arm statute extend ***beyond*** the constitutional due process inquiry. (Dkt. No. 64 at 18) ("In Texas, unlike California, the long-arm statute extends ***beyond*** what due process requires") (emphasis added).

14

Specifically, BMW argues that Texas Civil Practice and Remedies Code § 17.045 requires transmitting service documents abroad for a nonresident defendant, which would trigger the Hague Convention. (Dkt. No. 64 at 18.) According to BMW, for this Court to exercise personal jurisdiction, Arigna must have complied with § 17.045, the Texas long-arm statute. The Court disagrees for two reasons.

First, as stated above, it is well-established in both the Fifth Circuit and Federal Circuit that the Texas long-arm statute's personal jurisdiction requirements are coextensive with the constitutional due process analysis. *See e.g., Johnston*, 523 F.3d at 609; *United Energy*, 818 F.3d at 212; *New World Int'l v. Ford Global Techs.*, 859 F.3d 1032, 1037 (Fed. Cir. 2017).[3] The Court finds no compelling reason to depart from this well-established precedent to find that the Texas long-arm statute extends beyond the constitutional minimum.

Second, requiring compliance with Texas service law to establish personal jurisdiction would effectively nullify Rule 4(e)(1)'s choice of law provision. As previously explained, Rule 4(e)(1) governs the service in this case, and it permits the plaintiff to serve the complaint either (1) under the law of the forum state *or* (2) under the law of the state where service is made. Fed. R. Civ. P. 4(e)(1). If Arigna was required to comply with the service requirements under § 17.045 to establish personal jurisdiction, then Rule 4(e)(1)'s choice to serve under the law of the state where service would be illusory, and  Arigna would be required to comply with Texas law for service regardless of its election under Rule 4(e)(1). Service under Rule 4(e)(1) does not necessarily require service to be performed according to Texas law. The Federal Circuit has rejected similar

---

[3] Even BMW's own case allegedly supporting its argument that the long-arm statute extends beyond the constitutional minimums explicitly states the opposite. *Compare Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369 (5th Cir.), *reh'g denied, clarification granted*, 82 F. App'x 144 (5th Cir. 2003) ("Because the Texas Long Arm Statute is **coextensive with the confines of due process**, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process") (emphasis added), *with* (Dkt. No. 64 at 18) (citing *Religious Tech.* as supporting: "[i]n Texas, unlike California, the long-arm statute extends **beyond** what due process requires)

arguments that compliance with § 17.045 is required to establish personal jurisdiction in the context of Rule 4(f)(3). *See In re OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 2021-165, 2021 WL 4130643 (Fed. Cir. Sept. 10, 2021). Since Arigna need not comply with Texas law under Rule 4(e)(1), this Court finds that compliance with § 17.045 is not required to establish personal jurisdiction. *See id.* at *2.

BMW argues, once again, that *Sheets* and *Schlunk* mandate compliance with the forum state's long-arm statute. (Dkt. No. 64 at 13, 17.) BMW's repetition of this argument further demonstrates that BMW's real issue is with alleged improper service, not a lack of personal jurisdiction. *Sheets* and *Schlunk* do not discuss the two-prong personal jurisdiction analysis, but instead address service requirements when dealing with foreign parties. *See* 891 F.2d 533; 486 U.S. 694. The Court analyzes personal jurisdiction under the two-pronged personal jurisdiction test. *See New World Int'l*, 859 F.3d at 1037; *Int'l Energy Ventures*, 818 F.3d at 212.

This Court may properly exercise jurisdiction over BMW. The Texas long-arm statute is coextensive with federal due process, so the Court need only look to the federal due process inquiry. Arigna has established a prima facie case for personal jurisdiction under the constitutional due process test by pleading BMW has minimum contacts with the forum state such that jurisdiction will not offend the traditional notions of fair play and substantial justice. Accordingly, the Court finds that it has personal jurisdiction over BMW and this case.

C.     **BMW's Motion to Dismiss Pursuant to Rule 12(b)(6)**

BMW also moves to dismiss under Rule 12(b)(6) for failure to state a claim for direct, contributory, and induced infringement. The Court addresses each in turn.

16

### 1.      Arigna has pled sufficient facts to state a claim for Direct Infringement.

BMW argues that Arigna has failed to state a claim for direct infringement because Arigna has not pled infringement based on any acts of BMW *that occur within the United States*. (Dkt. No. 64 at 21.) First, BMW argues that all of Arigna's allegations against BMW are based entirely on the actions of its subsidiaries and affiliates such as BMW NA or Texas dealerships that sell the accused products. (*Id.*) Second, BMW argues that Arigna did not sufficiently plead that BMW controls the operations of BMW NA. (*Id.* at 22.) Third, BMW contends that Arigna is estopped from arguing that the Texas dealerships selling the accused vehicles are BMW's places of business because this issue was litigated in *Arigna I* and *Arigna II*. (*Id.* at 22-23.) In those cases, this Court found that Arigna had not shown "the requisite level of control necessary to establish venue under any agency theory." *See e.g., Arigna I*, Dkt. 468.

Arigna responds that it has sufficiently identified infringing activity by BMW in the United States separate from the activities of BMW NA and the Texas dealerships. Specifically, Arigna alleges that BMW infringes by "design[ing], manufactur[ing], assembl[ing], import[ing], offer[ing] for sale, and/or sell[ing] automotive vehicles and components thereof that incorporate the Analog Devices AD8418." (Dkt. No. 66 at 18) (citing Dkt. No. 60 at ¶¶ 5, 31, 34-35, 41.) Arigna contends that BMW's subsidiary BMW NA is responsible for only one alleged infringing act, importation. (*Id.* at 18.)

Arigna also argues that BMW can (and should) be held liable for the infringing acts of its subsidiaries, including BMW NA. (*Id.* at 20.) Arigna alleges it has carried its burden at this stage in showing BMW NA's agency relationship with BMW, "particularly given the fact-intensive and non-public nature of parent-subsidiary relationships." (*Id.* at 21.)

17

Finally, Arigna argues that it is not precluded from arguing that the actions of the Texas dealerships are attributable to BMW. (*Id.* at 22-23.) It argues that the issue in *Arigna I* and *Arigna II* was whether the Texas dealerships were "regular and established places of business" under § 1400(b) for the purposes of establishing venue. *See e.g., Arigna I*, Dkt. 468. Arigna argues this is not the same issue as whether BMW may be liable for the infringing activity of the Texas dealerships under a theory that BMW "directs and controls" the dealerships' performance. (*Id.*) While Arigna concedes there may be some overlap in the facts, it contends that issue preclusion is not appropriate here. (*Id.*)

The Court agrees with Arigna. The Amended Complaint accuses BMW of "design[ing], manufactur[ing], assembl[ing], import[ing], offer[ing] for sale, and/or sell[ing] automotive vehicles and components thereof that incorporate the Analog Devices AD8418." (Dkt. No. 60 at ¶¶ 5, 31, 34-35, 41.) While BMW denies that it conducts these activities in the United States, attributing responsibility to its subsidiaries, the complaint identifies that BMW "itself" engages in these activities. (*Id.*) Accepting these well-pled allegations as true, Arigna has pled enough facts to state a claim for infringement.

Further, Arigna's agency allegations provide subsidiary factual support for the proposition that the subsidiaries' actions are attributable to BMW. *See Liberty Access Technologies Licensing LLC v. ASSA Abloy AB*, No. 2:22-CV-00507, Dkt. No. 61. Arigna contends that BMW controls BMW NA to a sufficient degree that BMW NA's activities are attributable to BMW.

> BMW . . . does business . . . through its subsidiaries . . . including through its wholly owned U.S. subsidiary [BMW NA], which participates in importing, marketing, distributing, and selling automotive vehicles and components from BMW-managed brands (e.g., BMW, Rolls-Royce, etc.) in the United States.

> (Dkt. No. 60 at ¶ 3.)

A plaintiff is not required to prove its case at the motion to dismiss stage. Rather, the plaintiff only needs to plead facts which, viewed in the light most favorable to the plaintiff, allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The precise degree of control that BMW exerts over its subsidiary BMW NA, and whether such control is sufficient to prove that BMW NA's actions are in fact attributable to BMW, is a fact-specific inquiry that Arigna need not prove at this stage. The Court, accepting the well-pled allegations as true, finds that Arigna has pled enough to state a claim for infringement based on BMW's control of its subsidiaries.[4]

Arigna is not estopped from pleading infringement based on the actions of the Texas dealerships. The issues here are not "identical" to those in *Arigna I* and *Arigna II* such that issue preclusion should apply. *See Aviles-Tavera v. Garland*, 22 F.4th 478, 483 (5th Cir. 2022) ("the facts and the legal standard used to assess [must be] the same in both proceedings"). In *Arigna I* and *Arigna II*, the Court determined that Arigna could not establish that the Texas dealerships were regular places of business to establish proper venue for BMW NA sufficient to survive a 12(b)(3) motion. *See Arigna I*, Dkt. 468; *Arigna II*, Dkt. 188. Here, the issue is whether Arigna has pled sufficient facts to establish that the Texas dealerships' acts are attributable to BMW sufficient to survive a 12(b)(6) motion. These are not "identical" issues. The Court finds that Arigna sufficiently pled facts to state a claim for direct infringement.

**2. Arigna has pled sufficient facts to state a claim for Contributory Infringement.**

BMW also argues that Arigna has not pled sufficient facts to state a claim for contributory infringement. BMW first argues that Arigna has not pled contributory infringement for the same

---

[4] The parties dispute whether Arigna was required to plead alter ego liability for BMW to be held liable for the infringing acts of its subsidiaries. The Court need not decide this issue here as it was first raised in BMW's reply brief.

reasons it argues under direct infringement. (Dkt. No. 64 at 24.) The Court rejects this argument for the same reasons as described above.

BMW further argues that Arigna failed to plead contributory infringement because Arigna failed to plead that the components sold or offered for sale have "no substantial non-infringing use." (*Id.* at 25) (citing *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1337(Fed. Cir. 2012). BMW contends that its vehicles have substantial non-infringing uses.

Arigna responds that it has pled that the Accused Products infringe the asserted patent each time the user drives the vehicle, which is sufficient to allege that the Accused Products are a material part of the invention and have no substantial non-infringing uses. (Dkt. No. 66 at 24) (citing *Arigna II*, at Dkt. 168.) Arigna further argues that BMW shows, at best, that the accused technology does not infringe when it is deactivated.

As the Court did in *Arigna II* responding to similar arguments, the Court finds that Arigna has stated adequate facts to support the conclusion that the accused products infringe the asserted patent every time the user drives the vehicle. For example, Arigna asserts that BMW's LEB450 Inverter, "implements circuitry and designs that directly infringe the technologies protected by the '082 Patent, and that infringing use is necessary for the inverter to function and to ensure the operation of the accused BMW vehicles' powertrain systems." (Dkt. No. 60 at ¶ 44.) It also alleges that BMW incorporates the Analog Devices AD8418 in BMW's accused vehicles and components, which "meets every element" of the representative claim 1, and that BMW "does so knowing that these products are especially made or adapted for uses that infringe the '082 Patent" and are "not suitable for substantial non-infringing use." (*Id.* at ¶¶ 35-41, 44.) Arigna has pled enough to claim the accused products lack non-infringing use and enough to state a claim for contributory infringement.

### 3.   Arigna has pled sufficient facts to state a claim for Induced Infringement.

BMW argues that Arigna fails to plead induced infringement because Arigna fails to plead that BMW had the intent for customers in the United States to infringe the asserted patent. (Dkt. No. 64 at 26.) First, it argues that BMW NA, not BMW distributes the instructions that Arigna alleges induce the infringement. Second, BMW argues that Arigna has failed to explain how providing the instructions provided to BMW's customers manifests an intent for those customers to infringe on the patent. (*Id.*) Third, BMW argues that Arigna presents evidence of BMW's intent to induce infringement that is older than the date BMW first knew about the Asserted Patent in this case. (*Id.*)

Arigna responds that BMW induces infringement by requiring its subsidiaries, including BMW NA, to distribute the instructions that induce infringement. (Dkt. No. 66 at 25-26.) Arigna argues that its Complaint includes enough detail regarding BMW's instruction to its customers to state a claim for induced infringement at the pleading stage. (*Id.* at 26.) Regarding BMW's third point, Arigna claims that BMW cannot dispute that it had knowledge of the accused products at least as of the filing of the original Complaint. (*Id.*)

The Court agrees with Arigna. The Complaint includes sufficient detail that BMW actively encourages and instructs its customers and end users to engage in alleged infringing use of the products by requiring its subsidiaries and affiliates to "store, display, distribute, and/or offer for sale marketing materials, brochures, product specifications, service information, warranty information, [and] financing information." (Dkt. No. 60 at ¶¶ 13-17, 42-43.) "At the 12(b)(6) stage, the Court finds it reasonable to infer the necessary intent to support a claim of induced infringement from the Plaintiff's allegations that Defendants simultaneously sell the Accused Products while supplying customers, manufacturers, and application developers with the cited literature which

instructs performance of allegedly infringing uses of the technology." *BillJCo, LLC v. Cisco Sys., Inc.*, No. 2:21-cv-181, 2021 WL 6618529, at *6 (E.D. Tex. Nov. 30, 2021). The Court further agrees that BMW had knowledge of the asserted patents at least as of the filing of the Complaint. Thus, BMW had knowledge of the Asserted Patents for at least some time during the infringement period sufficient to sustain a claim for induced infringement. *See id.*

 For the reasons stated above, the Court finds that Arigna has pled sufficient facts at the 12(b)(6) stage to state a claim for direct, contributory, and induced infringement.

### D.     BMW's Motion to Dismiss Pursuant to Rule 12(b)(7)

Finally, BMW moves to dismiss under Rule 12(b)(7) for failure to join a necessary and indispensable party. BMW argues that Arigna's dismissal of BMW NA from the suit is fatal to the entire suit because BMW NA is a necessary and indispensable party. (Dkt. No. 64 at 27-28.) BMW argues that under the Rule 19(b) factors, this Court should not proceed without BMW NA. (*Id.* at 28-30.) BMW argues that BMW NA's absence would significantly prejudice BMW NA because a finding that BMW infringes is tantamount to a finding that BMW NA infringes. (*Id.* at 29.) Further, BMW argues that there is a co-pending District of Columbia case that Arigna can litigate its claims in. (*Id.* at 30.) In *Arigna I* and *Arigna II*, this Court found that BMW NA is not subject to venue in this district. Since the court cannot proceed without BMW NA and venue is improper, BMW argues the case should be dismissed.

Arigna argues that BMW does not address the required Rule 19(a) factors for determining whether a party is indispensable and instead dives straight into the Rule 19(b) analysis, which it contends is fatal to the 12(b)(7) challenge. (Dkt. No. 66 at 27.) Arigna argues that the Rule 19(a) factors for indispensability are not met here. (*Id.* at 27-28.) Specifically, it contends that the parties can be accorded "complete relief," as "complete relief" under rule 19(a)(1)(A) refers only to the

parties already in the suit, not the party whose joinder is sought. (*Id.*) Further, a party is not a

"required" party for the purposes of according complete relief simply because that party is a joint

tortfeasor because a plaintiff is ultimately the master of its complaint and is not required to join all

tortfeasors. (*Id.*) (citing *Stingray IP Sols., LLC v. Signify N.V.*, 2021 WL 9095764, at *6 (E.D. Tex.

Oct. 25, 2021)). Further, Arigna argues that BMW NA's absence would not leave BMW subject to

double, multiple, or otherwise inconsistent obligations. (*Id.*)

Arigna also contends that the Rule 19(b) factors are not met here. (*Id.* at 28-29.) Arigna

argues that BMW has not shown that BMW NA's absence would prejudice either BMW NA or

BMW because BMW NA is a wholly owned subsidiary whose interests are adequately represented

by the parent company BMW. (*Id.*) Arigna further points out that these two parties share the same

counsel of record and in a parallel ITC investigation, BMW designated BMW employees (not

BMW NA employees) on topics relating to the accused products importation, sale for importation,

and sale after importation. (*Id.*) Further, the "opportunity" that Arigna has to obtain an adequate

remedy elsewhere comes from a "duplicative, second-filed declaratory judgment action BMW

brought two days before filing its motion to dismiss and nearly two years after Arigna filed the

instant, still pending action in the forum of its choosing." (*Id.* at 30.)

The Court agrees with Arigna. The Court recently dealt with a similar issue in *NorthStar*

*Systems LLC v. Volkswagen AG*, No. 2:22-cv-486, Dkt. 71 (September 5, 2023). In that case, as

with here, BMW argued BMW NA was a necessary and indispensable party, such that it must be

joined. There, again, BMW argued that a judgment against BMW would amount to a judgment

against BMW NA and that BMW NA was the principal actor that must be joined. The Court stated:

> The Court is not convinced that disposing of the action in BMW NA's absence
> would impair or impede BMW NA's ability to protect its interest. This is for the
> simple reason that BMW NA is a wholly-owned subsidiary of BMW, so the
> interests of these two entities align. In other words, BMW will adequately protect

the interests of BMW NA. *See Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 852 (9th Cir. 2019) ("As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." (quoting Alto v. Black, 738 F.3d 1111, 1127 (9th Cir. 2013))); *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 268 (5th Cir. 2022) (citing *Dine Citizens*, 932 F.3d 843 with approval in other respects). Further, BMW's speculation as to the predicted effects of going forward without BMW NA is just that— speculation. Such is inadequate to invoke Rule 19(a)(1)(B)(i).

*NorthStar*, No. 2:22-cv-486, Dkt. 71.

For the reasons above and for the same reasons stated in *NorthStar*, BMW NA is not a necessary or indispensable party, and the Court may proceed without BMW NA.

## IV.    CONCLUSION

For the reasons stated herein, the Court finds that BMW's Motion to Dismiss (Dkt. No. 64) should be and hereby is **DENIED** in all respects.

Since this order resolves the alleged jurisdictional and service of process issues, BMW's Motion for Protective Order (Dkt. No. 72) is **DENIED AS MOOT**.

**So ORDERED and SIGNED this 6th day of October, 2023.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE